CHARLES J. DELONE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77865. Promulgated October 20, 1936.

*H. Stanley Hinrichs, Esq.,* and *Oscar P. Mast, Esq.,* for the petitioner.

*John E. Marshall, Esq.,* and *J. L. Deveney, Esq.,* for the respondent.

1144

OPINION.

Murdock: There are two fraud issues in this case. The first is whether the returns for 1925, 1927, and 1928 are false or fraudulent with intent to evade tax within the meaning of sections 278 (a) of

the Revenue Acts of 1924 and 1926 and section 276 (a) of the Revenue Act of 1928. If the returns are not false or fraudulent, then the statute of limitations on assessment and collection of the deficiencies and penalties for those years bars recovery by the Commissioner, and decisions for the petitioner as to those years would be proper. The second fraud question is whether any part of any one or more of the deficiencies is due to fraud with intent to evade tax so as to justify imposition of the penalty of 50 percent of the deficiency, as provided in sections 275 (b) of the Revenue Act of 1926 and 293 (b) of the Revenue Act of 1928. The burden of proof in respect of these issues is upon the Commissioner. Sec. 907 (a), Revenue Act of 1924, as amended by sec. 601, Revenue Act of 1928. See also *Drawoh, Inc.*, 28 B. T. A. 666. The petitioner, of course, has the burden of showing error in the amount of the deficiencies, wherever that issue is involved. *Welch* v. *Helvering*, 290 U. S. 111; *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289. Therefore we have considered the evidence as it relates to fraud separately from such part of that same evidence as may relate to the deficiencies. The two fraud issues in any one of the years 1925, 1927, and 1928 need not be considered separately, for here, if there was a false or fraudulent return, then a part of the deficiency for that year must have been due to fraud with intent to evade tax. Each year must be considered separately, although evidence particularly relevant to one year may also have some bearing upon the question of fraud in another. Is there a preponderance of clear and convincing evidence of fraud in each year or in any year? *Drawoh, Inc., supra.* That question has been decided upon the evidence to support the fraud issues alleged in the answer, without any benefit to the Commissioner from his determination or from evidence relating to matters not alleged in the answer as supporting fraud.

The evidence shows clearly that the petitioner received but did not report interest on Hanover & McSherrystown Water Co. bonds belonging to him. This interest amounted to $600 in 1925 and $600 in 1927. Likewise it is clear that he realized a profit on the redemption of those bonds in 1928 which he did not report. The amount of his profit has not been proved by the Commissioner, but the fact that there was some profit has been established. The petitioner has admitted that he owned some bonds, received some interest, and had some profit from the redemption. He also received and did not report in 1927 $350 of interest on Republic of Finland bonds which belonged to him. This is admitted by the petitioner.

The evidence leaves no doubt that the petitioner sold his Hanover Cordage Co. stock in 1925 for an amount greatly in excess of the cost of the stock to him and greatly in excess of his basis for gain

or loss, i. e., cost of that acquired after February 28, 1913, and cost or fair market value as of March 1, 1913, whichever is greater, of that acquired before March 1, 1913. Sec. 204, Revenue Act of 1926. The only difference between the parties at the hearing as to the factors in the computation of the gain was over the fair market value of the stock which the petitioner held on March 1, 1913. The evidence, including the opinions of the witnesses, shows clearly that the value on March 1, 1913, was much less than the amount realized in 1925 for the same corporate interest. The petitioner gave his unsupported statement that the value was a certain amount which was double the figure mentioned by his other witness as the highest value which the stock possibly might have had on March 1, 1913. But other evidence shows that the actual value was much less. Even if the petitioner's figure were used, a profit would result. The petitioner knew in 1925 that he had a very substantial profit from the sale of this stock. This case differs from *Doric Apartment Co.*, 32 B. T. A. 1187, where there was a range in reasonable differences of opinion as to the value of notes sufficient to absorb the actual profit. Here, there was clearly a large profit under any reasonable opinion as to the value of the stock on March 1, 1913. Since the hearing (which was once continued for four days to aid the petitioner), new counsel for the petitioner has tried to make the point that the notes given by the purchaser in 1925 were of so little value as to wipe out the profit. Not only was that point not made at the hearing, but the evidence is the other way. The makers of the notes were responsible business men with whom the petitioner had been associated for many years, they had been running the company successfully, and their notes were secured by a sufficient part of the stock sold.

The petitioner realized but did not report a substantial profit in 1925 from the sale of the Hamm property. The Commissioner has proven the basis (cost of $17,100 in 1920) and the amount realized in 1925 ($25,000 in cash). The petitioner made some improvements to the property, but the cost of the improvements did not approach the difference between the amount realized and the original cost of the property. Furthermore, minimum reasonable allowances for depreciation on this business property for the period of the petitioner's ownership would reduce the basis for gain by a substantial amount. Thus, giving the petitioner the benefit of every doubt, the conclusion is inescapable that he had a substantial profit which should have been reported.

The Commissioner has proved convincingly that a part of the amount paid in 1928 and 1929 by Revonah to Hart was paid over to the petitioner or was used by Hart to pay obligations of the petitioner. The petitioner also benefited from the amount used by Hart to purchase Revonah stock, but since the evidence on that is not clear and

convincing, it will not be considered as supporting the fraud charges. The petitioner testified that he had some kind of an arrangement with Hart in regard to these matters, but he refused to explain what it was. Two thousand five hundred dollars used in 1927 for the petitioner's benefit or paid to him and $3,125 used in 1928 in the same way represented income to the petitioner under the general definition of income given in the revenue acts. He knew about these matters, but failed to report these amounts in his income tax returns.

The petitioner realized more from the sale of the Krug property than the cost of the property. But the evidence does not show the fair market value of his interest on March 1, 1913. Thus the Commissioner has not shown clearly and convincingly that the petitioner realized any profit in 1927 from the sale of the Krug property. This item has been disregarded in considering the proof of fraud, even though the strongest claims made by the petitioner do not completely eliminate a profit.

Although the determination of the Commissioner is of no benefit to him on the fraud issue and the evidence in the case does not show the details of the sale of the First National Bank stock, nevertheless the petitioner has admitted that he realized a profit in 1927 from the sale of that stock and has conceded the correctness of the figures used by the Commissioner in computing the profit. Yet he did not report any profit.

The Hanover Engineering Co. was completely owned and controlled by the petitioner and used by him for his own purposes. He purchased and received from it in 1928 a valuable property. Instead of paying for the property in some other way, he had the corporation open an account on its books in his name in which he was charged with the purchase price. He was credited in this account in 1928 with an item of $1,120, representing compensation for legal services which he had rendered to the corporation up to that time. That credit, under the circumstances, constituted the receipt of income by him. Cf. *William B. Grise*, 6 B. T. A. 743; *B. O. Lauerman*, 3 B. T. A. 683; *John Griffiths*, 15 B. T. A. 252 (reversed, 50 Fed. (2d) 782); *Hiram C. Wilson*, 17 B. T. A. 976. He failed to report it in his return.

The cost to the petitioner of the property mentioned in the preceding paragraph was $68,250. He had acquired another property in 1926 for $75,000. He sold the two properties in 1929 for $165,000. He thus realized a profit in 1929 of at least $21,750. Reduction of his basis for depreciation allowable would increase his profit. He did not claim, up to the close of the hearing, that the bonds which he received as principal payment for the properties were not worth their face value. The evidence is that they were worth face value. He did not report any profit from the sale on his return for 1929,

but instead stated on his return that he had realized no profit from the sale of real estate.

The above paragraphs contain a brief statement of the evidence relating to the omissions to which the Commissioner points in support of his fraud charges. One or two of the omissions might be excused on one ground or another, or at least might not be regarded as clear and convincing evidence of fraud. But most of them can not be ignored or condoned. This is particularly true where, as here, the petitioner was a lawyer, having a familiarity with and knowledge of income tax law greater than the average taxpayer might be expected to possess, and a keen appreciation of the consequences of his own acts. No tax was shown to be due on any of his returns for the four years in question. Even ignorance of the law does not excuse omissions such as this petitioner made. A finding of fraudulent intent must almost always depend upon circumstantial evidence. Here we are satisfied, beyond all reasonable doubts which might arise from the evidence, that the petitioner intentionally omitted income from each of his returns with an intent to evade tax.

He has attempted to explain and make excuse for some of the omissions. His testimony along that line has been carefully considered, but is deemed wholly inadequate to avoid the effect of the statutes. He claimed, for example, that he was entitled to deductions not shown on his return which would more than offset omissions of income. But he failed to establish his right to any such deductions, and failure to claim deductions is no excuse for failing to report income. *M. Rea Gano*, 19 B. T. A. 518. The statutes require that all income shall be reported. Deductions are allowed by statutes, but the statute does not allow taxpayers to make a mental calculation and report only a part or the net result of such undisclosed computations. The petitioner knew this. The petitioner had income which required the filing of returns. He knew that and filed returns, but he failed to include all of the income which he knew he had received.

The petitioner testified at length in this proceeding. He is an experienced, keen, alert business man and quite capable as a lawyer of handling his own affairs, including the presentation of all evidence which might help him in this proceeding. He had ample opportunity to make every explanation which might have been proper and helpful to him. He had with him his bookkeeper, Hart, and a capable accountant who had familiarized himself with the books and records of the petitioner. The latter gave such testimony as he was called upon to give so that it was clear and to the point. The petitioner and Hart were different. On some questions they were clear enough, but on others they were surprisingly vague and indefinite.

They frequently contradicted themselves. They made general statements when they should have been specific. The petitioner understood that there was need of clear and specific explanations of his business transactions. Yet many of his explanations are muddled and wholly unsatisfactory. We do not think that this situation was due to ignorance, indifference, or inability to clarify on the part of the petitioner. Having failed to satisfactorily meet the fraud charges proven by the Commissioner, the petitioner must suffer the consequences.

Taking up each year separately, it appears that the petitioner realized income in 1925 from bond interest, from the sale of his Hanover Cordage Co. stock, and from the sale of the Hamm property, yet reported none of it. All of these omissions can not be condoned, if indeed, any one of them could be. They clearly show a false or fraudulent return and a fraudulent intent to evade tax. The situation in 1927 differs only in detail. He omitted two items of bond interest and the profit from a sale of bank stock. He admits all three of these omissions, at least in part, but has offered no valid excuse for his acts. The items omitted from his return for 1928 are the profit from the redemption of bonds, money paid to him or expended to pay his obligations, and fees for legal services which he received through a credit against the purchase price which he owed for a property acquired in that year. All of these can not be explained except by concluding that he made at least one of the omissions in an attempt and with an intent to evade income tax which he knew was lawfully due. For 1929 he again omitted the money which came to him through Hart or which was expended by Hart in paying obligations of the petitioner, and he also omitted a large profit from the sale of the factory sites to the Revonah Spinning Mills. One or both of these was omitted with intent to evade tax. We think that all of these omissions were made wih fraudulent intent, but merely point out that such a conclusion is not necessary to the Commissioner's case. The occurrence of such omissions in other years is corroborative of our conclusion that the petitioner had a fraudulent intent in each separate year.

Most of the adjustments made by the Commissioner in the actual determination of the deficiencies must be approved, either because the evidence shows affirmatively that they are correct or because the evidence does not show that they are incorrect. The petitioner admits that he received some interest on Hanover & McSherrystown Water Co. bonds, but denies that it amounted to $600 in any one year. Yet he redeemed $10,000 par value of the 6 percent bonds in 1928 with interest at 6 percent, and for 1927 was shown owner's certificates (form 1000) which he had filed claiming credit for 2 percent tax paid at the source, showing the receipt by him in that

year of $600 interest on the bonds. He said he was "absolutely unable to explain" the filing of these certificates. He said that some of the bonds belonged to others but he failed to disclose the amounts owned by the others. He used the proceeds of the redemption for his own purposes. He said he did not know how much the bonds had cost him. He stated that some of these bonds and the Finland bonds were up as collateral for bank loans, he did not claim deductions for the interest paid on the loans, and the income offset the deductions. But his statement is unsupported and incorrect. The one did not exactly offset the other and he was allowed deductions for interest paid which may have included the interest on the bank loans. He made no effort to show what it included. He admits receipt of the interest on the Finland bonds.

The evidence fails to show, any error upon the part of the Commissioner in computing the profit upon the sale of the Hanover Cordage Co. stock. The petitioner attacked the March 1, 1913, value determined by the Commissioner. He gave an unsupported statement of his own that the value was much higher. Gitt, a witness for the petitioner, gave the value per share as between $200 and $250, but admitted that he was only guessing. The value determined by the Commissioner is supported by the opinion of one witness, by book values, by earnings, and other evidence. The sale was not an installment sale and the Commissioner taxed it correctly.

The petitioner, at times, attempted to tie-up for income tax purposes the sale of the Hamm property and his purchase of Community Hotel Co. stock. There is no such connection. The facts in regard to his purchase of the stock show clearly that that purchase in no way reduced his profit from the sale of the Hamm property.

The corporation known as the Community Hotel Co. was organized in 1924 for the purpose of constructing a modern hotel in Hanover. Residents of the town subscribed and paid for $300,000 par value of its stock during the years 1925 to 1927, inclusive. The petitioner subscribed on January 21, 1925, for 50 shares of the 6 percent $100 par value preferred stock of the corporation. He paid $1,000 on account of his subscription on August 2, 1925, $2,000 on July 10, 1926, and the balance later at a time not disclosed by this record. Thereafter, he purchased $2,000 par value of additional stock. The corporation erected a hotel building at a cost of about $500,000, which it still owns and operates. The petitioner is vice president of the corporation and a member of its executive committee. The stock of the corporation did not become worthless in 1925. The petitioner sustained no loss in 1925 as a result of his subscription and partial payment for the stock of the Community Hotel Co.

The petitioner claimed a somewhat larger expenditure for improvements than the Commissioner allowed on the Hamm property, but

failed to substantiate it. The Commissioner proved his figures from the petitioner's books, and the petitioner offered nothing further in support of his claim. The total depreciation by which the Commissioner reduced the basis is not excessive.

The petitioner refused to testify in regard to the items of $5,000 included in his income although received by Hart, except to deny that they were income to him. He said that there was something about the situation that was confidential between Hart and himself, a "life and death" matter, and for that reason he would make no explanation regardless of the consequences. Hart discussed the matter with apparent freedom, even though a clear understanding of the entire situation can not be gained from his testimony. It is clear that the petitioner directly benefited from a large part of the amounts paid to Hart by Revonah in 1928 and 1929. Hart tried to show that these amounts were repayments of loans made to him by the petitioner to purchase the Revonah stock, but his explanation failed when he was reminded of his earlier statement that the Revonah stock had been purchased with the rest of his so-called salary. Hart is a clerk or bookkeeper. If he performed services for Revonah worth $5,000 each year, the record fails to show it. The money paid to him was used in part to buy stock which was then endorsed in blank and turned over to the petitioner and in part to pay cash to and obligations of the petitioner. The Commissioner has taxed the entire amount as income of the petitioner. The evidence does not show any error in that action.

The Commissioner has determined that the petitioner realized a profit of $6,905.27 in 1927 from the sale of the Krug property. The petitioner has contended that the property was worth $12,000 on March 1, 1913, and, therefore, he had no profit when he disposed of it for that same amount. But in fact he owned only an undivided one-half interest in the property on March 1, 1913, since he had sold the other one-half by a fee simple deed and did not reacquire it until 1920, when he repurchased it for $4,250. He failed in his attempt to explain the details of those early transactions in order to show that the other party merely held the property as pledge for an indebtedness. Furthermore, the evidence fails to support his claim that the property was worth $12,000 on March 1, 1913. If it was, he owned only one-half and depreciation would reduce his basis and increase his profit. He undoubtedly had a profit from the sale of that property. The determination of the Commissioner has not been shown to be incorrect.

He concedes that he has failed to show error in the Commissioner's computation of a profit from the sale of his First National Bank stock. The credit for legal fees for services rendered to Hanover Engineering Co. has been discussed sufficiently in connection with the

fraud issues, except to state that the correct amount was $1,120, instead of $1,650. The Commissioner determined the latter amount, but $530 of it was shown to have been a return of advances made by the petitioner for organization expenses of the corporation, and, therefore, not income to him. The amount determined by the Commissioner as profit from the sale of the two factory sites to Revonah Spinning Mills was correct. If the Hanover Engineering Co. had a loss on that one of the properties which it sold to the petitioner, that fact would be immaterial here since the corporation was a separate taxpayer. Likewise, if it be a fact, as the petitioner contends, that the General Gas Electric Co. owed him a large debt which was never paid, that fact would not be relevant here, since the profits and losses in such a series of transactions, more or less loosely connected but occurring in different years, can not be summarized on the return for the final year. Income and deductions must be reported upon an annual basis. The transaction was not an installment sale. *Thomas F. Prendergast, Executor*, 22 B. T. A. 1259. The Commissioner did not err in taxing this profit.

The Commissioner disallowed $1,800 of a deduction claimed by the petitioner for 1927. The remainder of the deduction was allowed on some theory because expended in settlement of a claim against the petitioner pressed by S. L. Johns. The $1,800 was disallowed because for that amount the petitioner obtained title to two frame dwellings which he immediately sold for $2,000. The petitioner claims that these properties always belonged to him, but the evidence does not establish that fact. He was one of two trustees of the S. L. Johns estate and these properties were omitted from a deed, but that would not make the petitioner personally the owner of the properties. He was extremely vague on that point and failed to show his right to the deduction of $1,800. He also claims deductions for several alleged losses not claimed on his returns. The first is the cost of Magnetic Motors Car Co. stock. He contends that the stock became worthless in 1925 because in that year, so he says, the company lost its license to manufacture electric transmissions and went out of business. But he disclosed that he had practically no knowledge of the affairs of the company, its assets and liabilities at any time, or any other fact which might show just when the stock became worthless. The stock may have been worthless long prior to 1925 for all he knew or disclosed. The next is an alleged loss in 1925 of the amount of a loan to Hanover Motor Co. The loan was due in 1922 and the petitioner failed to show when he ascertained that the debt was worthless. The company went out of existence in 1925, but the petitioner may have known long before that that his debt was worthless. He was either unwilling to disclose his knowledge of the affairs of that company or was not familiar with its financial condition either in 1922 or in 1925. He did nothing in

1925 towards ascertaining that the debt was then worthless. He asks for a deduction for 1927 representing an amount he paid in 1924 as a result of endorsing the note of his first cousin. He has not shown either that he entered into the transaction for profit or that he ascertained that the note became worthless in 1927. Just why he now picks the year 1927 does not appear. The debt of $420 owed by Stine is next. That seems to have been the accommodation of a friend. But in any event we see no reason to conclude that the debt was ascertained to be worthless in 1927. Another item is a debt of $5,000 owed by C. S. Garman as part of the purchase price of some stock which the petitioner sold to Garman in 1918. There is no showing that the petitioner ever took or should have taken the amount into his income. Cf. *Charles A. Collin*, 1 B. T. A. 305. He held collateral. When, if ever, did it become worthless? Garman is still living and in business. The petitioner did nothing about this debt in 1927. The last item is the cost of stock of Hanover Printing Co. The purchase of that stock was not a transaction entered into for profit. The evidence does not show that the stock became worthless in 1927. There is no evidence of the earnings, prospects, or financial condition of the company at any time. These claims all appear to be afterthoughts upon the part of the petitioner. In no instance has he made a complete showing of worthlessness such as might reasonably be expected before a deduction should be allowed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*