WELCH *v.* HELVERING, COMMISSIONER OF INTERNAL REVENUE.

No. 33. Argued October 19, 1933.—Decided November 6, 1933.

112

*Mr. Edward S. Stringer,* with whom *Messrs. Thomas D. O'Brien,* and *Alexander E. Horn* were on the brief, for petitioner.

*Mr. H. Brian Holland* argued the cause, and *Solicitor General Biggs* and *Messrs. Sewall Key* and *John G. Remey* filed a brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The question to be determined is whether payments by a taxpayer, who is in business as a commission agent, are allowable deductions in the computation of his income if made to the creditors of a bankrupt corporation in an endeavor to strengthen his own standing and credit.

In 1922 petitioner was the secretary of the E. L. Welch Company, a Minnesota corporation, engaged in the grain business. The company was adjudged an involuntary bankrupt, and had a discharge from its debts. Thereafter the petitioner made a contract with the Kellogg Company to purchase grain for it on a commission. In order to reëstablish his relations with customers whom he had known when acting for the Welch Company and to solidify his credit and standing, he decided to pay the debts of the Welch business so far as he was able. In fulfilment of that resolve, he made payments of substantial amounts during five successive years. In 1924, the commissions

were $18,028.20; the payments $3,975.97; in 1923, the commissions $31,377.07; the payments $11,968.20; in 1926, the commissions $20,925.25, the payments $12,-815.72; in 1927, the commissions $22,119.61, the payments $7,379.72; and in 1928, the commissions $26,177.56, the payments $11,068.25. The Commissioner ruled that these payments were not deductible from income as ordinary and necessary expenses, but were rather in the nature of capital expenditures, an outlay for the development of reputation and good will. The Board of Tax Appeals sustained the action of the Commissioner (25 B.T.A. 117), and the Court of Appeals for the Eighth Circuit affirmed. 63 F. (2d) 976. The case is here on certiorari.

" In computing net income there shall be allowed as deductions . . . all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Revenue Act of 1924, c. 234, 43 Stat. 253, 269, § 214; 26 U.S.C. § 955; Revenue Act of 1926, c. 27, 44 Stat. 9, 26, § 214; 26 U.S.C.App. § 955; Revenue Act of 1928, c. 852, 45 Stat. 791, 799, § 23; cf. Treasury Regulations 65, Arts. 101, 292, under the Revenue Act of 1924, and similar regulations under the Acts of 1926 and 1928.

We may assume that the payments to creditors of the Welch Company were necessary for the development of the petitioner's business, at least in the sense that they were appropriate and helpful. *McCulloch* v. *Maryland*, 4 Wheat. 316. He certainly thought they were, and we should be slow to override his judgment. But the problem is not solved when the payments are characterized as necessary. Many necessary payments are charges upon capital. There is need to determine whether they are both necessary and ordinary. Now, what is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by time and place

and circumstance. Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often. A lawsuit affecting the safety of a business may happen once in a lifetime. The counsel fees may be so heavy that repetition is unlikely. None the less, the expense is an ordinary one because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and accepted means of defense against attack. Cf. *Kornhauser* v. *United States*, 276 U.S. 145. The situation is unique in the life of the individual affected, but not in the life of the group, the community, of which he is a part. At such times there are norms of conduct that help to stabilize our judgment, and make it certain and objective. The instance is not erratic, but is brought within a known type.

The line of demarcation is now visible between the case that is here and the one supposed for illustration. We try to classify this act as ordinary or the opposite, and the norms of conduct fail us. No longer can we have recourse to any fund of business experience, to any known business practice. Men do at times pay the debts of others without legal obligation or the lighter obligation imposed by the usages of trade or by neighborly amenities, but they do not do so ordinarily, not even though the result might be to heighten their reputation for generosity and opulence. Indeed, if language is to be read in its natural and common meaning (*Old Colony R. Co.* v. *Commissioner,* 284 U.S. 552, 560; *Woolford Realty Co.* v. *Rose,* 286 U.S. 319, 327), we should have to say that payment in such circumstances, instead of being ordinary is in a high degree extraordinary. There is nothing ordinary in the stimulus evoking it, and none in the response. Here, indeed, as so often in other branches of the law, the decisive distinctions are those of degree and not of kind.

One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle.

The Commissioner of Internal Revenue resorted to that standard in assessing the petitioner's income, and found that the payments in controversy came closer to capital outlays than to ordinary and necessary expenses in the operation of a business. His ruling has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong. *Wickwire* v. *Reinecke,* 275 U.S. 101; *Jones* v. *Commissioner,* 38 F. (2d) 550, 552. Unless we can say from facts within our knowledge that these are ordinary and necessary expenses according to the ways of conduct and the forms of speech prevailing in the business world, the tax must be confirmed. But nothing told us by this record or within the sphere of our judicial notice permits us to give that extension to what is ordinary and necessary. Indeed, to do so would open the door to many bizarre analogies. One man has a family name that is clouded by thefts committed by an ancestor. To add to his own standing he repays the stolen money, wiping off, it may be, his income for the year. The payments figure in his tax return as ordinary expenses. Another man conceives the notion that he will be able to practice his vocation with greater ease and profit if he has an opportunity to enrich his culture. Forthwith the price of his education becomes an expense of the business, reducing the income subject to taxation. There is little difference between these expenses and those in controversy here. Reputation and learning are akin to capital assets, like the good will of an old partnership. Cf. *Colony Coal & Coke Corp.* v. *Commissioner,* 52 F. (2d) 923. For many, they are the only tools with which to hew a path-

way to success. The money spent in acquiring them is well and wisely spent. It is not an ordinary expense of the operation of a business.

Many cases in the federal courts deal with phases of the problem presented in the case at bar. To attempt to harmonize them would be a futile task. They involve the appreciation of particular situations, at times with border-line conclusions. Typical illustrations are cited in the margin.*

The decree should be                                          *Affirmed.*

---

* Ordinary expenses: *Commissioner* v. *People's-Pittsburgh Trust Co.*, 60 F. (2d) 187, expenses incurred in the defense of a criminal charge growing out of the business of the taxpayer; *American Rolling Mill Co.* v. *Commissioner*, 41 F. (2d) 314, contributions to a civic improve- ment fund by a corporation employing half of the wage earning popu- lation of the city, the payments being made, not for charity, but to add to the skill and productivity of the workmen (cf. the decisions collated in 30 Columbia Law Review 1211, 1212, and the distinctions there drawn); *Corning Glass Works* v. *Lucas*, 59 App. D.C. 168; 37 F. (2d) 798, donations to a hospital by a corporation whose employes with their dependents made up two thirds of the population of the city; *Harris* v. *Lucas*, 48 F. (2d) 187, payments of debts discharged in bankruptcy, but subject to be revived by force of a new promise. Cf. *Lucas* v. *Ox Fibre Brush Co.*, 281 U.S. 115, where additional com- pensation, reasonable in amount, was allowed to the officers of a cor- poration for services previously rendered.

Not ordinary expenses: *Hubinger* v. *Commissioner*, 36 F. (2d) 724, payments by the taxpayer for the repair of fire damage, such pay- ments being distinguished from those for wear and tear; *Lloyd* v. *Commissioner*, 55 F. (2d) 842, counsel fees incurred by the taxpayer, the president of a corporation, in prosecuting a slander suit to protect his reputation and that of his business; *105 West 55th Street* v. *Com- missioner*, 42 F. (2d) 849, and *Blackwell Oil & Gas Co.* v. *Commis- sioner*, 60 F. (2d) 257, gratuitous payments to stockholders in settle- ment of disputes between them, or to assume the expense of a lawsuit in which they had been made defendants; *White* v. *Commissioner*, 61 F. (2d) 726, payments in settlement of a lawsuit against a member of a partnership, the effect being to enable him to devote his undi- vided efforts to the partnership business and also to protect its credit.