## A. GIURLANI & BRO., Inc. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 9621.

Circuit Court of Appeals, Ninth Circuit.
May 15, 1941.

Dinkelspiel & Dinkelspiel, Martin J. Dinkelspiel, and John Walton Dinkelspiel, all of San Francisco, Cal. (Fred S. Herrington, of San Franciso, Cal., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Harry Marselli, and M. S. Price, Sp. Assts. to the Atty. Gen., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

The fundamental question presented is whether $32,962.50 paid in 1935 by petitioner to creditors of an Italian corporation, which controlled the source of supply of petitioner's most profitable merchandise, to save the Italian corporation from bankruptcy, was deductible as an ordinary and necessary business expense or as a loss sus-

tained in trade or business. The Board of Tax Appeals held it was neither and sustained the Commissioner, who had refused to allow the deduction and had assessed a deficiency against the petitioner for the year 1935.

The Board found:

The petitioner is a California corporation, engaged in the wholesale grocery business since 1911. The most profitable part of its business is the importation and sale of olive oil, of which it is the largest importer on the Pacific Coast. The principal stockholders of petitioner are two brothers of Italian birth, A. Giurlani and Giuseppe Giurlani. For the past fifteen years "Star Brand" olive oil, purchased from Gaetano Giurlani, S.A., an Italian corporation of Lucca, Italy, has comprised the greater part of petitioner's olive oil importations. The principal stockholders of the Italian corporation are two brothers of the two principal stockholders of petitioner. The brothers in Italy had no stock in the California corporation, neither had the two brothers in California any stock in the Italian corporation. The trade-mark "Star Brand," which identifies the product of Gaetano Giurlani, S.A., was never registered in the United States, and petitioner never had any right to, or ownership in, the said trade-mark. The total gross profit on all merchandise sales made by petitioner in the calendar year 1935 was $142,323.61, of which $103,280.26 was from the sale of "Star Brand" olive oil. Petitioner distributed about 78,000 gallons of "Star Brand" olive oil in 1935.

In 1935 Gaetano Giurlani, S.A., became financially involved, was placed in bankruptcy, and petitioner received notice that its assets were to be auctioned off in bankruptcy sale. The president, vice-president, and secretary of petitioner conferred, agreed that the closing of the source of supply and inability to serve "Star Brand" olive oil would be detrimental to the business. The secretary was sent to Italy with full power to "do everything to save the Company." He negotiated, compromised, and settled with the creditors of Gaetano Giurlani, S.A., for the sum of $32,962.50, receiving therefor no consideration, tangible or intangible.

"Star Brand," a blend of olive oils, has a distinctive aroma, flavor, body, and color recognizable by merchants, cooks, and other users thereof; we are told there is no other olive oil exactly the same, although it is not urged that "Star Brand" is best.

The "Star Brand" had been inherited in Italy by five brothers from their father, who died in 1916; the fifth brother died in 1934, leaving his interest to the brothers resident in Italy. For more than ten years the brothers resident in California had used the trade-mark exclusively in North America, and the brothers resident in Italy had used the trade-mark elsewhere, except North America. An instrument recitative of these latter facts was registered in Rome, Italy, by the secretary of the California corporation, in 1935.

Petitioner offered no testimony in explanation of why it was not subrogated to the rights of the creditors to whom it made payment in behalf of the Italian corporation; or why it did not receive an interest or share in the Italian corporation upon paying this extraordinarily large sum of money to its creditors; or that it would be impossible to do business with the successor of the Italian corporation had the latter's creditors forced its stockholders out of control; or that it would have been impossible for it to specify to other producers of olive oil in the Lucca district of Italy, a blend which would approximate that which is known as "Star Brand."

It is elementary, of course, that the extent of allowable deductions from gross income for the purpose of income taxation is dependent upon legislative grace; that only as there is clear provision therefor can any particular deduction be allowed; and that, therefore, a taxpayer claiming a deduction must be able to point to an applicable statute and show that he comes within its terms. New Colonial Ice Co., Inc. v. Helvering, Commissioner, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; White v. Commissioner, 9 Cir., 61 F.2d 726, 728. Likewise, "It is well settled that the determination of the Commissioner is prima facie correct, and the burden is upon the taxpayer claiming a deduction disallowed by the Commissioner not only to prove that the Commissioner erred, but also to establish his right to the deduction and the amount thereof. [Cases cited.]" Langford Inv. Co. v. Commissioner, 5 Cir., 77 F.2d 468, 472. Moreover, on petition for review in the Circuit Court of Appeals, "The function of the court is to decide whether the correct rule of law was applied to the facts found; and whether there was

substantial evidence before the Board to support the findings made. * * *" Helvering v. Rankin, 295 U.S. 123, 131, 55 S. Ct. 732, 736, 79 L.Ed. 1343. See also Parkersburg Iron & Steel Co. v. Burnet, Commissioner, 4 Cir., 48 F.2d 163, 164.

The Revenue Act of 1934, 48 Stat. 680, allowed as deductions for the purpose of computing net income, "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *." Sec. 23(a), 26 U.S.C.A. Int.Rev.Code, § 23(a). It is not a sufficient compliance with the statute that the expense sought to be deducted is an ordinary expense or a necessary expense. "In order that such payments may meet the requirements of the statute, they must be both an ordinary expense and a necessary expense." Lloyd v. Commissioner, 7 Cir., 55 F.2d 842, 844. See, also, Commissioner v. The Hub, Inc., 4 Cir., 68 F.2d 349, 350. This rule is stated by the Supreme Court in Deputy v. DuPont, 308 U.S. 488, 497, 60 S.Ct. 363, 368, 84 L.Ed. 416, as follows: "* * * Congress has not decreed that all necessary expenses may be deducted. Though plainly necessary they cannot be allowed unless they are also ordinary."

The petitioner contends that the expenditure of $32,962.50, made by it in 1935, was an ordinary and necessary expense of the business and deductible as such and that the Commissioner erred in disallowing the claimed deduction. It argues "that whenever a taxpayer, individual or corporate, expends money for the purpose and with the motive of protecting an existing business, such expenditure constitutes an 'ordinary and necessary expense' which is deductible."

Petitioner marshals a formidable array of authorities as advancing its cause; respondent counters with an equally impressive display of decisions in support of the Commissioner and the Board's ruling. But these cases, and the many others discovered by us in independent research, fail to provide "any verbal formula that will supply a ready touchstone." Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212. This frustration caused the Supreme Court to say, in the case just cited: "Many cases in the federal courts deal with phases of the problem presented in the case at bar. To attempt to harmonize them would be a futile task. They involve the appreciation of particular situations, at times with border-line conclusions." Quite recently the same court gave utterance to a kindred thought in Deputy v. DuPont, 308 U.S. 488, 496, 60 S.Ct. 363, 367, 84 L.Ed. 416: "Review of the many decided cases is of little aid since each turns on its special facts." Thus, unfettered, we proceed to determine the question in this case on its own special facts, taking advantage of whatever help we may find in the decided cases. We are bound to give to the words "ordinary and necessary" their usual, ordinary, and everyday connotation, without reference to "some esoteric concept derived from subtle and theoretic analysis,"[1] and keep in mind the admonition that "when it comes to construction of the statutory provision under which the deduction is sought, the general rule that 'popular or received import of words furnishes the general rule for the interpretation of public laws' [case cited] is applicable."[2]

Was the payment necessary? Unquestionably, some action was required on the part of the taxpayer or of the Italian corporation if the former desired to save to itself the large profit which came to it as a result of its dealings in "Star Brand" olive oil. Perhaps, in the exercise of the judgment of petitioner's officers, it was thought "necessary" to make the payment. This would almost seem to follow from the stating of the fact, but here other considerations present themselves. We are not informed, by the record presented by the petitioner, of the effect of the payment and are left to assume that it had the desired effect—that of assuring the source of supply, of guaranteeing the flavor, odor, color, and body of the olive oil to be purchased by the petitioner. Nor are we enlightened as to precisely why it was necessary to make the payment without receiving any consideration therefor, tangible or intangible. Moreover, without stopping to labor the point, we are impelled to observe that while the payment appears expedient and wise from a business standpoint, its necessity has not been shown clearly, and not all wise and expedient payments are deductible as expenses.

---

[1] Old Colony R. Co. v. Commissioner, 284 U.S. 552, 561, 52 S.Ct. 211, 214, 76 L.Ed. 484.

[2] Deputy v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416.

856

■ Discussing the significance of the word "ordinary" in the statute, the Supreme Court said in Welch v. Helvering, supra, 290 U.S. at pages 113, 114, 54 S.Ct. at page 9, 78 L.Ed. 212:

" * * * Now, what is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by time and place and circumstance. Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often. A lawsuit affecting the safety of a business may happen once in a lifetime. The counsel fees may be so heavy that repetition is unlikely. None the less, the expense is an ordinary one because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and accepted means of defense against attack. [Case cited.] The situation is unique in the life of the individual affected, but not in the life of the group, the community, of which he is a part. At such times there are norms of conduct that help to stabilize our judgment, and make it certain and objective. The instance is not erratic, but is brought within a known type. * * *

"Men do at times pay the debts of others without legal obligation or the lighter obligation imposed by the usages of trade or by neighborly amenities, but they do not do so ordinarily, not even though the result might be to heighten their reputation for generosity and opulence. Indeed, if language is to be read in its natural and common meaning * * *, we should have to say that payment in such circumstances, instead of being ordinary is in a high degree extraordinary. There is nothing ordinary in the stimulus evoking it, and none in the response. Here, indeed, as so often in other branches of the law, the decisive distinctions are those of degree and not of kind. One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle."

■ In Deputy v. DuPont, 308 U.S. 488, 495, 60 S.Ct. 363, 367, 84 L.Ed. 416, the court considered the word "ordinary" in the following language: " * * * Ordinary has the connotation of normal, usual, or customary. To be sure, an expense may be ordinary though it happen but once in the taxpayer's lifetime. [Case cited.] Yet the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved. [Case cited.] Hence, the fact that a particular expense would be an ordinary or common one in the course of one business and so deductible under § 23(a) does not necessarily make it such in connection with another business. * * * One of the extremely relevant circumstances is the nature and scope of the particular business out of which the expense in question accrued. The fact that an obligation to pay has arisen is not sufficient. It is the kind of transaction out of which the obligation arose and its normalcy in the particular business which are crucial and controlling."

■ Assuming, arguendo, that the payment was necessary to the continued conduct of petitioner's business upon its previously highly profitable plane, we are not persuaded by the record made by the petitioner that such payment was ordinary in the common, accepted use of that term, to the extent that it was normal, usual, or customary. It is not usual for the customer to pay the debts of his wholesaler in order to keep said wholesaler in business. It seems to us absurd to argue that it is customary, even in a situation of this kind (which is in itself most unusual), for one to make such payment or expenditure, for which no liability exists, and neither demand nor accept any consideration whatsoever, tangible or intangible, in return for such payment. Sam P. Wallingford Grain Corp. v. Commissioner, 10 Cir., 74 F.2d 453, 454. The taxpayer made no effort whatsoever to explain or clarify its position in taking nothing at all in exchange for its payment of debts to which it was not a party and for which it was not liable. Although no point is made of it in the briefs, there was a closer than ordinary connection or relationship between the taxpayer corporation and the Italian corporation, and it reasonably could have been inferred by the Board that the failure to demand consideration might be attributed to that connection. In National Piano Mfg. Co. v. Burnet, Commissioner, 60 App. D.C., 160, 50 F.2d 310, 311, the petitioner paid a tax assessed against another corporation with which it was later consolidated. The court said: "* * * It is conceivable, and we think not unreasonable,

that, in the intimate interrelationship of the two corporations, the payment might well have been gratuitous and voluntary, and, in such case, admittedly it would not have been deductible, and, if it was not, it was the duty of the piano company to have shown otherwise, for it bore the burden and alone possessed knowledge of the facts." On the non-deductibilty of voluntary payments, see Pantages Theatre Co. v. Welch, 9 Cir., 71 F.2d 68, 69; Blackwell Oil & Gas Co. v. Commissioner, 10 Cir., 60 F.2d 257, 258; Robinson v. Commissioner, 8 Cir., 53 F.2d 810, 811, 79 A.L.R. 975; One Hundred Five West Fifty-Fifth Street, Inc. v. Commissioner, 2 Cir., 42 F.2d 849, 852. The petitioner in this case was under no legal obligation to make the payment in question. Obviously, the taxpayer did not prove its right to the deduction with the clearness required by the New Colonial case, supra. Irresistibly we are led to the conclusion that the Commissioner was correct in refusing to allow the deduction as an ordinary and necessary expense. Compare White v. Commissioner, 9 Cir., 61 F.2d 726, 728, 729.

Petitioner also contends, in the alternative, that the expenditure in question should be allowed as a deduction from petitioner's gross income as a loss sustained by the corporation and not compensated for by insurance or otherwise. The controlling section of the Revenue Act of 1934, Section 23(f), reads as follows:

"In computing net income there shall be allowed as deductions: * * *

"In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

"The term 'loss,'" say Paul and Mertens in the Law of Income Taxation, vol. 3, § 26.24, p. 251, "is a comprehensive term. It has been defined as:[1] ' "failure to keep that which one has." There are many kinds of loss: Money out of pocket; a judgment, changing the status from solvency to insolvency.' Another definition is:[2] 'an especially [sic], unintentional parting with something of value,' Notwithstanding the comprehensive character of the term 'loss,' as above defined, it is vital to a loss that something be parted with.

There is no loss when an investment is preserved by an additional contribution; * * *."

The payment or expenditure was deliberate and intentional, made by the taxpayer for the insuring of its profits for future years. In the sense that no enforceable obligation existed against it the expenditure was voluntary. It has been held by this court that money voluntarily paid in settlement of the obligation of a third person cannot be said to be a loss to the taxpayer within the meaning of the statute. White v. Commissioner, 9 Cir., 61 F.2d 726, 729. The Eighth Circuit Court of Appeals held that the voluntary assumption of an obligation of another does not come within the revenue statutes as an ordinary and necessary business expense or as a business loss not compensated for by insurance or otherwise. Robinson v. Commissioner, 53 F.2d 810, 811, 79 A.L.R. 975. Dresser v. United States, Ct. Cl., 55 F.2d 499, 510, states that "A loss, in order to be deductible under the statute, must be an unintentional parting with something of value." We reiterate, the parting with the money by the taxpayer here was deliberate and intentional, according to the testimony introduced by it.

Failure to realize a desired profit is not of itself a loss. If this taxpayer did not make the expenditure, there would be no loss, for all that would happen would be a failure to show a desired profit. In other words, if petitioner's olive oil business did not show a profit in a subsequent year equal to the profit realized in the preceding year, the difference would not thereby become a deductible loss. It cannot, by the simple expedient of making an expenditure for the purpose of insuring a continuance of substantial profits, charge that payment off on its books as a loss, when the difference between greater profits and lesser profits is not such a loss. If such shrinkage in profits is not a loss, how can it be contended that a sum deliberately expended solely to prevent such shrinkage is a loss?

Another important consideration is that whatever benefit might ensue from the expenditure in question would continue for several years, have at least a reasonable life of more than one year, and would not be exhausted in the year of the expen

---

[Citing:] [1] Electric Reduction Co. v. Lewellyn, 3 Cir., 11 F.2d 493, 494, reversed, 275 U.S. 243, 48 S.Ct. 63, 72 L. Ed. 262;

[Citing:] [2] Dresser et al. v. United States, Ct.Cl., 55 F.2d 499.

diture. In this view, the payment would seem to partake of the nature of a capital expenditure, rather than of an expense or a loss. Compare First Nat. Bank of St. Louis v. Commissioner, 3 B.T.A. 807, 808, where Board said that "amounts expended for assets that are to continue in use in the business over several years are usually to be classified as capital items, and the sum paid therefor is recovered over the life of the asset, if it be of an exhaustible character. The transaction which called for the expenditures here in question was presumably one which resulted in increasing and maintaining the earning power of the taxpayer, and thus throughout its corporate life the taxpayer will enjoy the fruits of these expenditures." See, also, Connally Realty Co. v. Commissioner, 5 Cir., 81 F.2d 221, 222. This expenditure might well be likened to the cost of eliminating competition, which has been held to be a capital expenditure. Newspaper Printing Co. v. Commissioner, 3 Cir., 56 F.2d 125, 127. In any event, we are certain it was neither a loss nor an ordinary and necessary business expense.

Petitioner argues a few other matters in its brief, but we find them unimportant and largely immaterial. Even assuming petitioner's contentions on these to be correct, we find the rulings did not affect its substantial rights.

Seufert Bros. Co. v. Lucas, 9 Cir., 44 F.2d 528, relied upon by petitioner, is sufficiently unlike the instant case on the facts to negative its effectiveness to compel us to overturn an obviously proper decision of the Board. In the cited case, the expenditure prevented an actual destruction of property of the taxpayer, while in the instant case, the payment merely was for the purpose of preventing an anticipated shrinkage of profits. No justification is shown for any extension of the Seufert case beyond its own factual situation.

We do not attempt to interfere with the conduct of petitioner's business; we do not criticize the business methods employed. We simply say that petitioner has failed to prove with clearness its right, under the law, to the deduction claimed. "No showing has been made sufficient to justify us in ignoring the presumption of correctness in the Commissioner's ruling, or to hold there was an entire lack of substantial evidence to support the findings of the Board. Moreover, if there is opportunity for opposing inferences, the judg-

ment of the Board controls. [Cases cited.]" Jones et al. v. Commissioner, 9 Cir., 103 F.2d 681, 685.

The decision of the Board of Tax Appeals is affirmed.