**DUNN & McCARTHY, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 67.**

Circuit Court of Appeals, Second Circuit.

Dec. 10, 1943.

D. A. Embury, of New York City (Curtis, Mallet-Prevost, Colt & Mosle, of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Robert N. Anderson, Sp. Assts. to the Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The sole question for decision is whether a certain sum paid out by the taxpayer during the year 1939 was an allowable deduction from gross income as an ordinary and necessary expense of carrying on its trade or business within the meaning of § 23(a) of the Internal Revenue Code as amended by § 121 of the Revenue Act of 1942, 56 Stat. 819, 26 U.S.C.A. Int.Rev. Code, § 23(a). The taxpayer is a New York corporation engaged in the manufacture and sale to retail stores of women's shoes. For two and one-half years before his death Buford H. Jones had been president of the corporation, and for a number of years before his election to the presidency he had been vice-president and sales manager. He committed suicide on December 6, 1939, leaving an estate which was hopelessly insolvent. He had suffered heavy losses in race-track gambling and his estate was sufficient to pay only 7 or 8 per cent. of the amount of his unsecured indebtedness. Following his death it was discovered that beginning in June 1939 he had from time to time borrowed money from seven of the taxpayer's top ranking salesmen who had worked directly under him. The aggregate of their loans with accrued interest was $20,523.92. On December 21, 1939, the taxpayer paid this amount to the salesmen, taking in return assignments of their respective claims against the estate of Jones. On these claims the taxpayer received from the estate $1,476.06 in 1940 and $64.35 in 1941, which sums it returned as income in the respective years of receipt. The payment of Jones' debts to the salesmen was recommended by the newly elected president of the taxpayer for the purpose of protecting the good will of its business; it was approved by the board of directors. On the books of the taxpayer it was charged to profit and loss. In its tax return for 1939, the taxpayer claimed the payment as an allowable deduction from gross income, but the commissioner disallowed it and the Tax Court sustained his ruling.

Although the corporation was under no legal obligation to make good to the salesmen the president's personal borrowings, it properly recognized a moral obligation to do so, for the lenders were necessarily influenced in some measure by the official position of the borrower; he was their immediate superior. The Tax Court made a finding that "There was no indication that if the loans were not paid the petitioner would lose either customers or its salesmen." If this means merely that no salesman threatened to resign and no customer threatened to withdraw his account if the loans were not paid, the finding is correct. But if it means that failure to pay would have had no effect upon the loyalty of the salesmen or the good will of the customers, we think that the finding is not supportable. It was the unanimous opinion of the directors that a failure by the corporation to recognize its moral obligation would not only impair the attitude of the salesmen toward the company but also would affect adversely the opinion of customers who learned of it. To us this seems a self-evident inference. It also finds support in the testimony. Immediately after the death of Mr. Jones, the salesmen asked Mr. Gorman, a director who succeeded Mr. Jones as sales manager, whether the company was planning to do anything about their loans, thus indicating their opinion that the company should do something. It is true that none of them showed in any way that they were disgruntled, but as Mr. Emerson, the newly elected president, said, "They didn't have time. Before we saw them again they had been paid." How customers would have viewed a failure to make good the salesmen's loans appears from the testimony of Mr. Gorman. Before the company paid, four customers who knew of the loans expressed to him the expectation that the company would take care of them; after the company did so, remarks of customers "came pretty thick and fast", and were "very complimentary". Mr. Emerson testified that the spirit of cooperation between the company's officers,

244

salesmen and customers had never been as high as at the present time. Thus it seems clear that the outlay was made for the purpose of conserving the good will of salesmen and of customers and actually accomplished that purpose.

Such an expenditure of corporation funds would seem to be an "ordinary and necessary" expense in carrying on the business. The opinion of the Tax Court does not question the judgment of the petitioner's directors in thinking that their action was an appropriate and helpful course to follow "and to that extent what was done might be regarded as necessary", but holds that it was not an "ordinary" expense. Reliance for this view is put upon Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 9, 78 L.Ed. 212. There the taxpayer, Welch, had been secretary of a corporation which was adjudicated bankrupt and discharged from its debts. Thereafter he went into business for himself and in order to re-establish relations with customers he had known when acting for the corporation and to solidify his own credit and standing he decided to pay the debts of the bankrupt so far as he was able. In fulfilment of that resolve he made payments of substantial amounts during five successive years. The Commissioner ruled that these payments were not deductible as ordinary and necessary expenses but were rather in the nature of capital expenditures. This ruling was sustained, the opinion by Mr. Justice Cardozo holding that payment under such circumstances instead of being ordinary was in a high degree extraordinary. On the facts the case is plainly distinguishable from the case at bar. Welch made a capital outlay to acquire good will for a new business. In the present case the payment was an outlay to retain an existing good will, that is, to prevent loss of earnings that might result from destroying such good will by failing to recognize the company's moral obligation. Moreover, we do not think that under the circumstances of the present case the expenditure was "in a high degree extraordinary." It was the kind of outlay which we believe many corporations would make, and have made, under similar circumstances. As Mr. Justice Cardozo stated at page 115 of 290 U.S., at page 9 of 54 S.Ct., 78 L.Ed. 212: "The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle." See, also, Deputy v. Du

Pont, 308 U.S. 488, 496, 60 S.Ct. 363, 84 L.Ed. 416. According to the ways of conduct and the forms of speech prevailing in the business world we believe that payment by a company of loans made by its employees to its president under whom they worked and who proved to be insolvent, is an ordinary and necessary expense of the business when the directors in good faith and with good reason authorize the payment for the purpose of preserving the loyalty of employees and the good will of customers. The situation may be unique in the life of the petitioner, but it is not so in the life of business corporations as a group. Indeed, it seems less unique than the payment which was held deductible in Helvering v. Community Bond & Mortgage Corp., 2 Cir., 74 F.2d 727. In our opinion the deduction should have been allowed. Accordingly the order is reversed and the cause remanded for recomputation of the petitioner's deficiency.