**CARROAD et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**CARROAD v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 54, 55, Dockets 21042, 21043.

United States Court of Appeals
Second Circuit.

Jan. 31, 1949.

---

3 Emphasis added.

Carroad & Carroad, of New York City (Kenneth Carroad, of New York City, of counsel; Arthur Rosenberg, of New York City, on the brief), for petitioners.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, and S. Dee Hanson, Sp. Assts. to the Atty. Gen., for respondent, Commissioner of Internal Revenue.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Kenneth Carroad and Alexander H. Carroad, brothers, were and had long been engaged as law partners under the firm name of Carroad & Carroad, sharing partnership profits 60% and 40% respectively. Their practice which was largely in income tax matters involved much clerical and accounting work for which it was necessary for them to employ accountants and auditors and maintain a rather large clerical staff. As the accounting work increased, they deemed it advisable to organize a separate accounting firm. Accordingly, on November 22, 1941, an accounting firm was organized. This firm consisted of Kenneth Carroad, a member of the law partnership, together with Ben E. Jackson, Nathan Frankel and Charles Eisen, accountants. The agreement provided that Kenneth Carroad should supply the necessary funds, equipment and assets to carry out the work of the accounting partnership for the year beginning January 2, 1942 and ending December 31, 1942. Kenneth Carroad agreed to advance the sum of $8,000 in cash to Frankel and Jackson by opening an account in a New York bank in the name of Carroad, Frankel & Jackson, upon which only Frankel and Jackson jointly might draw checks to the amount of $400 per month each, so long as each was able and willing to perform the services expected of him. It was further agreed that the net profits in each year should be determined upon and divided as follows:

"(a) Each of the partners shall be credited with the following drawings:—

Carroad ............$5,000.00 per annum
Frankel ............$5,000.00 per annum
Jackson ............$5,000.00 per annum
Eisen ..............$1,200.00 per annum

"(b) The balance of net profits, if any, remaining after the payment of the sums mentioned in subdivision (a) hereof, shall be divided among the partners in the following proportion:—

Carroad .....................37 1/2 %
Frankel .....................25 . %
Jackson .....................25 %
Eisen .......................12 1/2 %

The parties hereto shall share all losses at the same proportions.

\* \* \* \* \* \*

"(d) It is clearly understood that the sum of $4,000.00 to Frankel and $4,000.00 to Jackson which is advanced by Carroad pursuant to paragraph (4) shall be treated as a part of the $5,000.00 drawing to which Frankel and Jackson are each entitled herein. Thus for the calendar year 1942, Frankel and Jackson each shall be entitled to draw an additional $1,000 over the $4,000.00 to be placed to the credit of each of them in the special bank deposit provided in paragraph (4). The sum of $8,000.00 thus advanced by Carroad shall be repaid to him out of partnership gross income, as promptly as funds are reasonably made available (but only after paying other partnership expenses which may be outstanding). Beginning with 1943, all drawings shall be only out of partnership gross income, and Carroad will no longer be legally obligated to make any advances to Frankel and Jackson."

On December 29, 1941, checks for $4,000 each were given by Kenneth Carroad from funds of the law partnership to Frankel and Jackson and endorsed by the latter for deposit to the credit of Carroad, Frankel & Jackson, on December 30, 1941, pursuant to the provisions of the agreement forming the accounting partnership. The Tax Court found that if the $8,000 had ever been repaid out of the accounting partner-

ship gross income it would have gone to the firm of Carroad & Carroad; also, Kenneth Carroad's share of the profits of the accounting firm belonged to the law firm. The law firm and its partners conducted their business on a calendar year cash receipts and disbursements basis and reported their income accordingly. Under the agreement, the accounting partnership was not to begin operations until January 2, 1942 and the deposit of $8,000 was only to be made "on or about January 2, 1942."

The taxpayers Kenneth Carroad and Alexander Carroad claimed a deduction of $8,000 in the 1941 return of the law partnership as a necessary and ordinary business expense. The Commissioner disallowed the $8,000 deduction, thereby increasing the distributive share of each partner, and the Tax Court held that no part of the $8,000 was so deductible, on the ground that it was "in the nature of a capital advance in a new business, as Section 7 (d) of the agreement provides the sum was to be repaid 'out of partnership gross income, as promptly as funds are reasonably made available (but only after paying other partnership expenses which may be outstanding).'"

We hold that the decision of the Tax Court was right and should be affirmed.

It is not necessary to suppose that payments in advance for services to be rendered by Frankel and Jackson in 1942 would not be proper business deductions in computing income of the law partnership if Frankel and Jackson had merely stood in the ordinary position of employees. Here, the payments were not only made before any services were to begin, but also were made under conditions where by the terms of the contract Frankel and Jackson were not entitled to draw money from the deposited funds except from month to month and only if they performed services. In other words, the Commissioner could properly find that the deduction was sought for payments made in December, 1941—an earlier time than was required by the agreement—in order to secure a deduction in 1941 which had no real relation to the business purposes of the law firm and was primarily designed to minimize income taxes.

But even if we assume that in spite of the foregoing considerations the deduction would have been proper if the payments had merely represented advances for subsequent services, they in fact represented more than that. The advances were made to finance the accounting partnership, a new undertaking. The advances were to be repaid from earnings of that partnership to the extent that such earnings were sufficient and repayment would have to be made before Frankel and Jackson could receive anything further from the net earnings of the enterprise. The payments were properly described by the Tax Court as in effect an "irrevocable guarantee" of a minimum income from the accounting partnership to induce Frankel and Jackson to enter it. The advances were not simply payments for services, but represented an assurance to these two partners that their interest in the new firm would immediately bear fruit.

If the advances can be regarded as creating an indebtedness to the law partnership payable out of the income of the accounting partnership, they would resemble income debentures payable out of earnings and as such would be closely analogous to investments by the law firm in the accounting partnership. Moreover, to the extent that they gave rise to a debt conditionally payable they could not be deducted even if they ultimately became worthless until they could be regarded as bad debts deductible under the terms of the statute. See Int. Rev.Code, § 23(k), 26 U.S.C.A. § 23(k). On the whole, the Tax Court seems to have been right in treating the advances as investments by the law firm to secure the immediate services of the accounting firm and to give the law firm through its appointee, Kenneth Carroad, a share in a new enterprise. It seems manifest, therefore, that these advances were not deductible in 1941 under any tenable theory.

For the foregoing reasons the orders of the Tax Court are affirmed.