CHARLES J. DINARDO AND KATHLEEN B. DINARDO, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CLARENCE B. P. SLAUGHTER AND GERTRUDE SLAUGHTER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SAMUEL J. RESTIFO AND VALERIE R. RESTIFO, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38111, 38112, 38113. Filed May 28, 1954.

*Norman B. Miller, Esq.*, for the petitioners.
*Michael J. Clare, Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* The principal question to be decided is whether payments made by petitioners' partnership in 1948 and 1949 to Collinwood Hospital.to make up operating deficits sustained by Collinwood, were properly deductible by the partnership under section 23 (a) (1) (A) of the Internal Revenue Code as ordinary and necessary business expenses.

The respondent disallowed the deductions taken in the partnership returns for these payments and increased the distributive share of partnership income on the individual returns of each petitioner for 1948 and 1949. Respondent's position is that the payments were not incurred in the partnership's business, that is, the practice of medicine, but rather were connected with the business of the hospital, a separate entity, and in any event, that the payments do not constitute ordinary and necessary expenses.

We have found that the payments in question were made to keep Collinwood Hospital in operation and thereby to protect the partnership's practice and income from a loss which the partners believed would result if the hospital closed. The petitioners controlled the operation of the hospital and reserved its facilities exclusively for patients admitted in their names. All fees for medical services rendered to hospitalized patients constituted partnership income, and the partnership also earned medical fees from patients who, although not requiring hospitalization, came or were sent to the partnership for medical care because the latter enjoyed unrestricted access to hospital facilities. That the existence of Collinwood did constitute a source of partnership income is illustrated by the refusal of several companies to send their industrial injury cases to the partnership after Collinwood closed in 1950, and a similar reaction on the part of the police with respect to severely injured accident victims.

Respondent's first contention is that the deductions are not allowable because the payments were incurred in carrying on Collinwood's business, and not that of the partnership, citing *Interstate Transit Lines* v. *Commissioner*, 319 U. S. 590, rehearing denied 320 U. S. 809, affirming 44 B. T. A. 957, affd. 130 F. 2d 136.

We think that the facts distinguish this case from *Interstate Transit Lines* v. *Commissioner, supra.* The partnership did not pay Collinwood Hospital's operating deficits to enable Collinwood to make profits from the operation of a hospital, thereby to augment the partnership income with hospital income. The payments were made to keep Collinwood in operation in order that the medical partnership

itself could continue to earn medical fees from patients who would be hospitalized at Collinwood, or who would come, or would be sent to the medical partnership because of the latter's access to Collinwood's facilities.

This case also is distinguishable from *Deputy* v. *DuPont*, 308 U. S. 488, and *Eskimo Pie Corporation*, 4 T. C. 669, affirmed per curiam 153 F. 2d 301, which involve disallowance of a stockholder's deductions for expenditures made on behalf of his corporation, where the corporation's business operations are unrelated to any business the stockholder may carry on other than as a source of investment income.

Respondent next maintains that the partnership's payment of Collinwood's operating deficits was not an ordinary and necessary business expense. Respondent relies on *Welch* v. *Helvering*, 290 U. S. 111. See also *Carl Reimers Co.* v. *Commissioner*, 211 F. 2d 66, affirming 19 T. C. 1235.

We disagree with respondent's contentions. The facts in this case more closely resemble the situations involved in decisions which allow, as ordinary and necessary business expenses, payments made by a taxpayer to protect or preserve its business income from loss or diminution. See, for example, *Robert Gaylord, Inc.*, 41 B. T. A. 1119; *Hennepin Holding Co.*, 23 B. T. A. 119; *First National Bank of Skowhegan*, 35 B. T. A. 876; *Edward J. Miller*, 37 B. T. A. 830; *Scruggs-Vandervoort-Barney, Inc.*, 7 T. C. 779; *Dunn & McCarthy* v. *Commissioner*, 139 F. 2d 242, reversing a Memorandum Opinion of this Court entered March 19, 1943; *Catholic News Publishing Co.*, 10 T. C. 73; *L. Heller & Son, Inc.*, 12 T. C. 1109. See also *United States* v. *E. L. Bruce Co.*, 180 F. 2d 846; *B. Manischewitz*, 10 T. C. 1139.

In *Scruggs-Vandervoort-Barney, Inc.*, *supra*, the taxpayer acquired the assets and liabilities of a retail department store named Scruggs-Vandervoort-Barney Dry Goods Company in a nontaxable statutory reorganization, and operated the business without changes in personnel or physical properties. The predecessor had owned 97.25 per cent of the stock of a bank, the Scruggs, Vandervoort & Barney Bank. The bank was located in the predecessor's store, and most, if not all, of the bank's depositors were its customers. The bank failed in 1933, and the depositors eventually were paid liquidating dividends aggregating 80.5 per cent of their deposits. The taxpayer undertook to reimburse the depositors in the amount of their 19.5 per cent loss in order to avoid unfavorable customer reaction which would result in a loss of patronage and diminution of business to the department store. To this end the taxpayer forwarded to each depositor, as a "voluntary action," a "voluntary gift offer" of merchandise purchase certificates equal to the depositor's unsatisfied claims against the bank. This

Court held that the cost of the goods purchased by the depositors with the certificates was an ordinary and necessary business expense.

In *Dunn & McCarthy, supra,* the taxpayer's president had borrowed a substantial amount of money from the firm's top ranking salesmen and had committed suicide, leaving a hopelessly insolvent estate. The corporation paid the loans in order to prevent impairing the salesmen's loyalty toward the company and to avoid the adverse opinion of customers who had learned of the situation. The deduction taken by the corporation for the payment of the former president's indebtedness was allowed as an ordinary and necessary business expense. Similarly, in *Catholic News Publishing Co., supra,* the taxpayer's business and reputation were threatened by a controversy between the taxpayer's president and a trade association, of which the taxpayer was a member. The dispute grew out of a claim asserted against taxpayer's president, personally, for an alleged mishandling of funds during his tenure as the association's treasurer. The taxpayer's board of directors decided that the claim against its president should be paid to avoid further injury to the taxpayer's business and reputation, and the amount so expended by the corporation to settle the controversy was held by this Court to be an ordinary and necessary business expense. In *Hennepin Holding Co., supra,* the taxpayers leased a large office building for 20 years and much of the surrounding area for 99 years, hoping to create a new retail district in the city of Minneapolis. When the building lease had only 6 years more to run, it became apparent that the business of the taxpayer's principal sublessee, a retail clothing house, was in jeopardy due to a continuing decrease in business. A new tenant could have been secured for the remaining few years only with difficulty and probably only after extensive repairs and remodeling, the cost of which could not be recovered before the termination of the principal lease. The sublessee also was indebted to the taxpayer. The taxpayer spent substantial sums in advertising the sublessee's business in an effort to rehabilitate the latter's sales. This expenditure was undertaken to avert the injury to the taxpayer's rental income which would have resulted from the sublessee's vacation of the premises and from the adverse affect of the sublessee's failure on the taxpayer's other tenants in the vicinity. The sums so spent by the taxpayer were held to be properly deductible as business expense.

These decisions, and the other cases previously cited, allow, as ordinary and necessary business expenses, expenditures made by a taxpayer seemingly on another's behalf, to prevent injury to its own business income. We think the expenditures made by petitioners' partnership to preserve the source of medical fees provided by Collinwood's existence should be accorded similar treatment.

The payments were not capital advances made to finance a new enterprise, such as were involved in *Kenneth Carroad* v. *Commissioner*, 172 F. 2d 381, affirming a Memorandum Opinion of this Court. Respondent also relies on *A. Giurlani & Bro.* v. *Commissioner*, 119 F. 2d 852, affirming 41 B. T. A. 403. The taxpayer's income was derived principally from the sale of Star Brand olive oil, which it purchased from an Italian corporation, the principal stockholders of which were two brothers of the taxpayer's two principal stockholders. The taxpayer compromised and paid certain claims against the Italian corporation, which had been placed in bankruptcy and whose assets were to be auctioned. It claimed that the payment was made to protect its source of supply of Star Brand olive oil, which allegedly had a distinctive and unusual blend. The payment was held not to constitute an ordinary and necessary business expense.

Concededly there is a similarity between the two cases. However, we observe several factors adverted to by the Court of Appeals in the *Giurlani* case which we consider of importance and which are not present in this case. Among the distinctions noted in the *Giurlani* case, *supra*, p. 854, was the taxpayer's failure to attempt to establish that it would have been

impossible to do business with the successor of the Italian corporation had the latter's creditors forced its stockholders out of control; or that it would have been impossible for it to specify to other producers of olive oil in the Lucca district of Italy, a blend which would approximate that which is known as "Star Brand."

In the instant case, we have found that the medical practice of the partnership would have been adversely affected if Collinwood closed. Respondent claims that the partners could obtain privileges at other Cleveland hospitals; but the evidence establishes that even though petitioners did enjoy such privileges, the closing of Collinwood was attended by an immediate loss of part of the partnership's industrial accident practice, and also the loss of income it had derived from treating cases of severe injury brought in by the police. On this aspect, the present case is more similar to *Robert Gaylord, Inc.*, *supra*, which this Court decided shortly after the *Giurlani* case. In the *Gaylord* case, the taxpayer, whose principal office was in St. Louis, manufactured and sold shipping containers. It executed a guaranty in favor of the First National Bank of St. Louis against any loss the latter might sustain in taking over the assets and liabilities of the Franklin-American Trust Company, also of St. Louis. The taxpayer was not a depositor or stockholder of the Franklin-American Trust Company. It executed the guaranty to prevent the failure of the latter bank and a potential financial crisis in St. Louis, which according to the evidence, would have jeopardized the taxpayer's accounts

receivable, paralyzed its current business, particularly the Christmas trade then at its height, and cut down its prospective orders. The amount the taxpayer was required to pay under its guaranty was held to be deductible as a business expense.

Respondent also contends that the agreement of December 9, 1947, in which the partnership undertook to pay the hospital's deficits, should not be regarded as creating a legal obligation on the partnership's part in favor of the hospital, since the transaction was between closely related parties and the terms were such that the partnership would not have undertaken the agreement if dealing with a hospital at arm's length. Further, respondent maintains that the agreement was not binding on the partnership, inasmuch as it was signed by one of the three partners, contrary to an express prohibition contained in the partnership articles. We agree with respondent in part. The record does not support petitioner's explanation that the agreement merely formalized an obligation, implicit in the sales agreement of May 19, 1947, whereby the partnership was required to keep the hospital operating. We also agree that the hospital's promise to keep two beds available for the partnership at all times was without substance and should not be regarded as supporting an obligation to pay the deficits. The hospital's purported promise gave the partnership nothing it did not in fact enjoy previously, inasmuch as the partners exercised control of the hospital's operations and the facilities had always been maintained for their exclusive use.

Similarly, it is apparent that the agreement was not executed as required by the partnership articles, inasmuch as it was executed by only one partner. On the other hand, it is equally apparent from the evidence that all three partners did approve the payment of Collinwood's deficits both in 1948 and in 1949. We regard these payments as having been made voluntarily by the partnership without consideration from the hospital. The fact that the partnership was under no obligation to make up Collinwood's operating deficits is not decisive, in view of the benefits to the partnership medical practice which the hospital's continued existence afforded. *L. Heller & Son, Inc., supra; Ray Crowder*, 19 T. C. 329. See also *Dunn & McCarthy* v. *Commissioner, supra; Scruggs-Vandevoort-Barney, Inc., supra.*

It is held that the partnership is entitled to deduct the payments to Collinwood of $15,913.73 in 1948 and $21,007.84 in 1949 as ordinary and necessary business expenses, and that the respondent erred in disallowing these deductions and in increasing the petitioners' shares of distributive partnership income in 1948 and 1949. The petitioners have conceded the correctness of several other adjustments made by respondent. Accordingly,

*Decisions will be entered under Rule 50.*