MARINE CONTRACTORS AND SUPPLY, INC., Petitioners v COMMISSONER OF INTERNAL REVENUE, Respondent
MARINE CONTRS. & SUPPLY v. COMMISSONER
Docket No. 9523-78.
United States Tax Court
T.C. Memo 1982-22; 1982 Tax Ct. Memo LEXIS 724; 43 T.C.M. (CCH) 305; January 13, 1982. *724 X was the chief executive officer of P and X's wife and son owned both directly and indirectly all of the stock of P. X was also the sole individual general partner of certain limited partnerships and the chief executive officer of the only corporate general partner of the partnerships. P paid commission expenses of the limited partnerships owed to agents who sold partnership interests to outside investors. P acquired oil and gas drilling contracts from the limited partnerships with funds therefor coming from all the invested funds. Held: the acquisition of drilling contracts by P from the limited partnerships resulted from X's dominance over all the relevant entities. Thus, commissions paid by P but owed by the partnerships to selling agents were not an ordinary and necessary expense of P in the pursuit of its business. Held further: the commissions paid to selling agents were in essence nondeductible syndication fees of the partnerships. Accordingly, deductions for the commissions are disallowed when paid by P by virtue of X's dominance over P and the partnerships. Alvin L. Freeman, for the petitioner. David W. Johnson, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $ 78,712 in petitioner's 1974 Federal income tax. Due to concessions of petitioner, the sole issue presented for our determination is whether commission expenses paid by petitioner were ordinary and necessary business expenses of the petitioner pursuant to section 162. [1]
*726 FINDINGS OF FACT Some of the facts have been stipulated. These facts, together with the exhibits attached thereto are incorporated herein by this reference. Petitioner, Marine Contractors and Supply, Inc., had its principal place of business in Houston, Texas, at the time its petition in this case was filed. The corporation filed its 1974 Federal income tax return with the Director, Internal Revenue Service Center, Austin, Texas. The petitioner is a Texas corporation engaged in contract drilling of oil and gas wells and related services. During 1974 Roger H. Evans, Jr., was the president and chief executive officer of the petitioner. The shareholders of the petitioner were Roger Evans, Jr.'s wife and son and a corporation known as Marlin Laboratories, Inc., which was wholly-owned by the wife of Roger Evans, Jr. During the year in issue, Roger Evans, Jr., and the Phoenix Energy Company (PEC) were the two general partners of each of the following oil and gas limited partnerships: (1) Phoenix Development Fund 74-1 (2) Phoenix Development Fund 74-2 (3) Phoenix Development Fund 74-3 (4) Phoenix Development Fund 74-4 (5) Phoenix Development Fund 74-R (6) Phoenix *727 Development Fund 74-K Roger was the president and chief executive officer of PEC while his wife, Ann Evans, was the sole stockholder of the company. To procure financing for the operations of the partnerships, selling agents corresponded with the general partner, PEC, concerning the selling of partnership interests in each of the oil and gas limited partnerships. After having secured an investor-limited partner for limited partnership, the selling agent sent the gross amount received from the investor-limited partner as the investor's subscription, to the general partner, PEC. Upon receipt of the gross subscription by PEC, the petitioner issued a check on its own corporate bank account to the selling agent in payment of his commission which would be no greater than 10 percent of the gross subscription. There were no express agreements, invoices or bills between petitioner and the limited partnerships concerning the commission expenses paid by petitioner for the services of the selling agents in procuring capital for partnership operations from investors. However, Roger Evans, Jr., as a general partner of the limited partnerships and chief executive officer of both PEC, the other *728 general partner, and the petitioner, entered into agreements with the selling agents that petitioner would pay the commission expenses. Roger Evans, Jr., was the organizer of the six oil and gas limited partnerships involved herein. From their inception it was intended that petitioner would be the drilling contractor for partnership operations. The various limited partnerships executed "turnkey" drilling contracts with petitioner, i.e., contracts which obligated the contractor to perform all the services and furnish all the materials applicable to drilling and completing a well. The basic steps for financing the drilling operation involved the following: (1) Petitioner estimated the costs of drilling a well. (2) The number of wells to be drilled was calculated by reference to the total funds contributed by investors to the limited partnership. (3) The limited partnerships were invoiced during 1974 by petitioner for prepaid expenses designated as "drilling costs," "completion costs" and "plug and abandonment costs" in the following total amounts: Limited Partnership
Amount Invoiced
Phoenix Development Fund 74-1
$ 1,339,720.61
Phoenix Development Fund 74-2
1,624,528.23
Phoenix Development Fund 74-3
1,644,500.00
Phoenix Development Fund 74-4
688,000.00
Phoenix Development Fund 74-R
477,624.55
Phoenix Development Fund 74-K
1,098,409.43
$ 6,872,782.82
*729 These invoices represented the total amount of funds that the partnerships were able to raise for investment in oil and gas projects. Sales commissions were then paid by petitioner to the selling agents from the moneys transferred to petitioner from the partnerships. Petitioner did not report as income for 1974 any of the amounts received from or on behalf of the limited partnerships as petitioner reflected its gross receipts on the completed contract method of accounting.However, each limited partnership claimed a deduction on its partnership return for the total amount of intangible drilling costs listed above. [2]
In 1974 petitioner paid commission expenses of $ 304,105 to selling agents who procured financing for the partnerships. Petitioner deducted these expenses on its 1974 return and respondent has disallowed the deduction on the ground that the expenses were not ordinary and necessary expenses of the petitioner. [3]
*730 OPINION The controversy in this case focuses on the propriety of petitioner's deduction for commission expenses paid to selling agents. The amounts so paid were to compensate selling agents for their efforts in inducing third parties to invest in oil and gas limited partnerships. The invested funds were then transferred to petitioner, a drilling corporation, pursuant to "turnkey" drilling contracts entered into by the partnerships and the petitioner. It is from these transferred funds that petitioner paid the commissions involved herein. Section 162 generally allows deductions for ordinary and necessary business expenses. Subject to the provisions of section 263 regarding capital expenditures, ordinary and necessary commissions are allowable business expenses, section 1.162-1(a), Income Tax Regs. Section 263 provides that capital expenditures are not deductible. The main thrust of petitioner's argument is that the commissions it paid were an ordinary and necessary expense, as securing funds from the limited partners was necessary to insure that petitioner would acquire the oil and gas drilling contracts so that income from the performance of the contract could be realized. *731 Respondent contends that the commission expenses in issue were not ordinary and necessary business expenses of petitioner and asserts further that in any event, the expenses were actually syndication expenses of the partnerships which are nondeductible by virtue of our opinions in Kimmelman v. Commissioner, 72 T.C. 294, 304 (1979) and Cagle v. Commissioner, 63 T.C. 86 (1974), affd. 539 F.2d 409 (5th Cir., 1976). [4]
Generally, payment by one taxpayer of the obligation of another taxpayer is not an ordinary and necessary business expense. Welch v. Helvering, 290 U.S. 111, 114 (1933); Lohrke v. Commissioner, 48 T.C. 679, 684 (1967). However, courts have allowed deductions when the expenditures were made by a taxpayer to protect or promote *732 his own business, even though the transaction giving rise to the expense originated with another taxpayer. See e.g., Lutz v. Commissioner, 282 F.2d 614 (5th Cir., 1960); Rushing v. Commissioner, 58 T.C. 996 (1972); Lohrke v. Commissioner, supra; Snow v. Commissioner, 31 T.C. 585 (1958); Dinardo v. Commissioner, 22 T.C. 430 (1954). In Mensik v. Commissioner, 37 T.C. 703 (1962), affd. 328 F.2d 147 (7th Cir. 1964), the taxpayer owned over 98 percent of savings and loan institutions. He contracted with the institutions to pay for their advertising costs. In return, the institutions would refer their insurance business to him. Respondent argued that the advertising expenditures were capital expenditures made to enhance the business of the institutions which were almost wholly-owned by petitioner. The Court in sustaining respondent's position, held that in view of the taxpayer's control of the institutions he did not have to pay for their advertising in order to secure the insurance business. Thus, the expenditure was not made to protect or promote the taxpayer's *733 business. Furthermore, the Court noted that the payments were essentially made to finance the launching of the new institutions and the agreements whereby the taxpayer was to pay for their advertising costs were merely "gimmicks" which were to supply the basis for deductions to be taken by the taxpayer. The instant case represents an even clearer scheme of gimmickry than that presented in Mensik. Quite similar to the situation in Mensik, we find in the case herein that Roger Evans, Jr., controlled and dominated the petitioner and the limited partnerships. He was the chief executive officer of the petitioner, the only individual general partner of the limited partnerships and the chief executive officer of the only corporate general partner of the partnerships. In addition, his wife, son and a corporation wholly-owned by his wife were the sole stockholders of petitioner. All of these relationships lead to the inescapable conclusion that Roger Evans, Jr., had, in practice, complete control over the operations of all the entities involved in the present controversy. Thus it seems quite evident that no matter which entity paid the commissions of the selling agents, petitioner *734 would have acquired the drilling contracts from the limited partnerships. We therefore do not believe that the payment by petitioner of the selling commissions was for the acquisition of contracts which would promote its business. Furthermore, unlike Mensik, the moneys which eventually were used to pay the sales commissions flowed from the entities with which the expenses arose (the partnerships) to petitioner and were then paid. Considering that the commissions could more readily have been paid by the partnerships rather than petitioner, we are hardpressed to find on these facts that the expenses were the ordinary and necessary business expenses of the petitioner. Thus, we are even more compelled to disallow the deduction here than we were in Mensik where the existence alone of the taxpayer's dominance over the institutions which were the sources of advertising expenses was enough for this Court to find that the taxpayer did not make the expenditure to promote its own business. It is well settled, that a business expense will be considered an "ordinary" expense within the meaning of section 162 if the expenses is within a known type in the community of which the *735 petitioner is a part. Welch V. Helvering, supra, at 114. Thus, it is on this premise that petitioner argues that there is a general industry practice to pay commissions for the costs of acquiring drilling contracts. True as this may be, petitioner misperceives the fact that in this case the sales commissions were paid for the efforts of selling agents who procured financing for partnership operations from outside investors. The payment of commissions to raise funds for the partnership was not an ordinary and necessary business expense of the petitioner in acquiring drilling contracts. Acquisition of the contracts was forthcoming to petitioner because of its chief executive officer's dominance over the limited partnerships. Furthermore, the commissions paid were in essence syndication fees of the partnerships, i.e., they were fees paid to agents who found investors willing to purchase limited partnership interests. As such, the fees are nondeductible capital expenditures. Kimmelman v. Commissioner, supra; Cagle v. Commissioner, supra.Thus, we are unwilling to convert an otherwise nondeductible expense into a deductible *736 expense by virtue of an individual's dominance over other related entities such that he is able to cause another entity to make the expenditure. We have reviewed the cases cited by petitioner in support of its position and find them distinguishable from the case at bar on the ground that in each of the cases cited, the Court found that commissions paid were for valuable services rendered to the payor. In the case herein, valuable services have been rendered only to the partnerships to secure financing but not to the petitioner-payor. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The deductions claimed by the partnerships for intangible drilling costs are disputed by respondent, but are not in issue in this case.↩
3. The amount of sales commissions deducted by petitioner and originally in dispute was $ 308,563. A total of $ 4,458 of the alleged sales commissions was disallowed by respondent on the ground that this amount was not for sales commissions and was subsequently reimbursed. Petitioner has conceded that this adjustment was proper and thus the amount of sales commissions in dispute in this case is $ 304,105.↩
4. Pursuant to the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, section 709 was added to the Internal Revenue Code to deal expressly with the organizations and syndication fees of a partnership. Section 709(a), applicable only to partnership taxable years beginning after December 31, 1975, provides that syndication fees are nondeductible expenditures.↩