OPINION. LeMiee, Judge: The question presented for our determination is whether a loss of $22,725.61 sustained by petitioner upon the sale of real property in 1942 is deductible by petitioner as an ordinary loss or as a business expense, or whether it is a loss upon the sale of capital assets as defined in section 117 (a) (1), Internal Revenue Code,[2] no part of which is deductible under the limitations of section 117 (d) (1), Internal Revenue Code.[3] Petitioner contends that the properties upon which it sustained the loss are specifically excluded from the definition of capital assets by section 117 (a) (1) as either “property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business” or as “property, used in the trade or business, of a character which is subject to the allowance for depreciation.” There is no question that the Rolla properties were properties “held” by petitioner, although it did not purchase them. Richards v. Commissioner, 81 Fed. (2d) 369, but “The section * * * must be construed precisely as written and unless the particular property, in question was held by petitioner ‘primarily for sale to customers in the ordinary course of * * * [its] trade or business’ the loss is limited as provided in section 117 (d).” Thompson Lumber Co., 43 B. T. A. 726. The question of whether the properties were held by petitioner primarily for sale to customers in the ordinary course of its business is primarily a question of fact. Its determination must depend upon a consideration of all the factors and circumstances surrounding the entire transaction in relation to the conduct of petitioner’s business in 1942. Guthrie v. Jones, 72 Fed. Supp. 784; Boomhower v. United States, 74 Fed. Supp. 997. The petitioner originally became involved with the Rolla project in connection with its business of examining and insuring titles to real estate and acting as escrowee between lending institutions and builders. As petitioner received funds from the mortgagees for use in the development it insured the mortgagees against loss on account of unfiled mechanics’ and materialmen’s liens in the amount advanced and guaranteed completion of the buildings. When the Huffs abandoned the project, petitioner was faced with the choice of either liquidating the properties in their incompleted state and bearing the loss on its guarantee to the mortgagees, or of taking over the properties and completing them in the hope of reducing or avoiding the anticipated loss upon their ultimate disposition. That petitioner anticipated such a possibility when it originally contracted to act as escrowee between the mortgagees and the Huffs is evidenced by the precautionary measures it took at that time. Upon a full consideration of all the facts and circumstances surrounding petitioner’s activity in relation to the Eolia project, we are convinced that the properties came into petitioner’s possession as a necessary incident to the conduct of its business and that they were held and completed primarily for sale to customers in the ordinary course of its business. Joe B. Forison, 47 B. T. A. 158. The fact that petitioner had not had occasion to follow this course of action before (so far as our record shows) does not prevent its being in the ordinary course of petitioner’s business in the light of the surrounding circumstances. Welch v. Helvering, 290 U. S. 111. In any event, we think it is clear that the petitioner’s activity in relation to the Eolia properties after it took title to them amounted to engaging in the real estate business. The facts that petitioner had no license to engage in the real estate business and that it apparently had not done so in the past are not determinative of the question of whether petitioner entered the real estate business when it acquired these properties. It took title to the properties, supervised the completion of construction, rented some of the houses, and ultimately sold them all. Petitioner did not merely hold the property for sale as an investment when it acquired them. It actively engaged in improving and completing them, in the meantime deriving such revenue from them as it could until it managed to complete and sell them to such purchasers as it could find. We conclude that petitioner was engaged in the real estate business in the fullest sense from the time it acquired the Rolla properties. Cf. Snell v. Commissioner, 97 Fed. (2d) 891; Ehrman v. Commissioner, 120 Fed. (2d) 607; certiorari denied, 314 U. S. 668. The loss sustained in the amount of $22,725.61 upon the sale of the properties was an ordinary loss upon the sale of properties held primarily for sale to customers in the ordinary course of petitioner’s business. Thompson Lumber Co., supra, upon which respondent’s arguments depend heavily, is not applicable to this case, since it is clearly distinguishable upon its facts. We found in that case that the taxpayer lumber company foreclosed on real estate to recover the cost of lumber . and materials furnished by it in the course of its lumber business. It did nothing with the properties so acquired other than to list them for sale with real estate agents, and could not be considered to be engaged in the real estate business to any extent. Petitioner claimed a total deduction on its returns for 1942 of $36,444.40 for losses on construction guarantees. Of that amount, respondent disallowed $25,912. Petitioner has offered no evidence to explain or support the deductibility of any amount in excess of the $22,725.61 lost on the Eolia project. Since petitioner has failed to bear its burden of proof with regard to the amount of $3,186.39 difference between the amount shown to have been lost on the Eolia project and the amount disallowed by respondent, respondent’s dis-allowance of that difference is sustained. Eeviewed by the Court. Decision will he entered wnder Rule 50. (a) Definitions. — As used in this chapter— (1) Capital assets. — The term “capital assets” means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind whieh would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), or an obligation of the united States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer. (d) Limitation on Capital Losses.— (1) Corporations. — In the case of a corporation, losses from sales or exchanges of capital assets shaU be aUowed only to the extent of gains from such sales or exchanges.