**ROBINSON LAND & LUMBER CO. OF ALABAMA, Inc. v. UNITED STATES.**

Civ. No. 1057.

United States District Court,
S. D. Alabama, S. D.

April 28, 1953.

Charles B. Arendall, Jr. (of Smith, Hand, Arendall & Bedsole), Mobile, Ala., for plaintiff.

Percy C. Fountain, U. S. Atty., Mobile, Ala., for defendant.

THOMAS, District Judge.

This is an action under section 1346 of the Judicial Code of the United States, Title 28, U.S.C.A. § 1346, for the refund of federal income tax alleged to have been illegally collected from the plaintiff for the year 1946. By virtue of the pleadings, and a stipulation entered into by the parties in open court, the sole issue in the case is whether the cost of a timber cruise covering property owned by the plaintiff was properly deductible as an ordinary and necessary expense within the meaning of section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A.

### Findings of Fact.

1. About 1930, the plaintiff acquired over 120,000 acres of timber land, together with a saw mill, located in Levy County, Florida, and commenced the business of cutting such timber and manufacturing the same, as well as timber acquired from others, into lumber. This business operation has continued to the present time.

2. Saw mill operators, like the plaintiff, customarily and regularly, in the ordinary course of their business, procure cruises of timber on lands owned by them. Such cruises are designed to show, among other things, the types, quantities, location, and growth possibilities of the timber which is cruised. The cruise in question in this case was what is known as a ten per cent cruise, meaning that ten per cent of the acreage being cruised was actually examined and the timber located thereon estimated, and

such estimates then were projected or extended with respect to the remaining acreage. The type of cruise here involved is a type usually and ordinarily obtained by such saw mill operators.

3. While such a timber cruise is in the nature of an inventory of standing timber, it necessarily is only an estimate. Upon actual cutting of the cruised timber, it may be found that the quantities on the ten per cent of the acreage which was actually examined were not properly estimated, or that the remaining ninety per cent of the acreage was sufficiently different from the ten per cent which was examined to produce substantial errors, or that actual growth has been substantially different from estimated growth. In addition to such inaccuracies being determined, any such cruise may become of little or no value by virtue of storm, insect or other damage to the timber lands. The plaintiff and other such operators customarily make constant checks of the timber which they own, using a timber cruise like the one involved in this case for purposes of comparison with the other information, including other cruises, which they develop and procure.

4. By the year 1946 there existed a wide difference of opinion between employees of the plaintiff as to the amount of timber located on its said lands. Plaintiff needed a more accurate estimate of such timber than it then had available in order to make a prompt determination as to whether it should continue to operate its saw mill and manufacture into lumber timber cut from its said lands, and as to scope and extent of its future operations, if any. Plaintiff also was uncertain as to the quantities of timber to report on its federal income tax returns for the purpose of taking proper allowances for depletion. The parties stipulated in open court that the amount paid by the plaintiff to the independent contractor for the timber cruise in question, covering substantially all of its said Florida land, was a reasonable sum to pay for such cruise, and that the plaintiff actually incurred liability for and paid the sum of $17,150.80 for the cruise in the year 1946.

5. Under standard accounting practices, the cost of such a timber cruise, not made in connection with the purchase or sale of lands or timber, is treated as an ordinary operating expense and is not capitalized. The cruise in the instant case was not made in contemplation of a purchase or sale of plaintiff's lands or timber.

6. Under the circumstances disclosed by the evidence in the case, the cost to the plaintiff of such timber cruise was an ordinary and necessary business expense, paid and incurred by the plaintiff during the taxable year in carrying on its trade or business.

### Conclusions of Law.

1. The court has jurisdiction over the parties and of the subject matter.

2. The ruling of the Commissioner of Internal Revenue, adverse to the contention of the plaintiff, is presumed to be correct and the plaintiff has the burden of proving it to be erroneous. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212.

3. In computing net income for federal income tax purposes, the plaintiff was entitled to deduct " * * * All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Section 23(a) (1) (A), Internal Revenue Code.

4. The term "ordinary" does not imply that the event must occur at regular intervals; rather, it is a common or frequent occurrence in the type of business involved. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416.

5. The plaintiff has met the legal burden imposed upon it of showing that the amount paid for said timber cruise was an ordinary and necessary business expense, and the cost thereof was an ordinary and necessary expense within the meaning of the cited statute, and deductible thereunder.

6. Judgment should be entered in favor of the plaintiff, in accordance with the stipulation of the parties made in open court, for an amount equal to the sum of $4,948.21, plus interest thereon since September 6, 1950, together with the costs of the action.