GARY WEISBART and HALENE WEISBART, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weisbart v. Commissioner
Docket No. 8152-73.
United States Tax Court
T.C. Memo 1976-54; 1976 Tax Ct. Memo LEXIS 354; 35 T.C.M. (CCH) 241; T.C.M. (RIA) 760054; February 26, 1976, Filed *354 Gilbert Goldstein, for the petitioners. Fredrick B. Strothman, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $70,257.37 in the Federal income tax of Gary and Halene Weisbart for 1968. A concession having been made by the respondent, it remains for us to decide: whether G. Weisbart & Company (a Subchapter S corporation) paid $100,106 in feed expenses during its taxable year August 14-December 31, 1968; and if so, whether the deduction of those expenses in that year resulted in a material distortion of the income of Gary Weisbart, the sole shareholder of G. Weisbart & Company. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners Gary and Halene Weisbart are husband and wife. They filed a joint Federal income tax return for the year in issue with the Director, Southwest Service Center, Austin, Texas. Petitioners were residents of Colorado when they filed their petition with this Court. For several years prior to 1968 Gary Weisbart conducted a cattle feeding operation in Tucumcari, New Mexico, as its sole proprietor. On August 4, 1968, Gary organized *355 a corporation styled "7A Land & Feeding Company" (7A) under the laws of Colorado. In exchange for shares of stock Gary transferred to 7A certain of the assets of his business: land, office equipment, feed lot equipment and feed lot improvements. With these assets 7A engaged in the business of buying and selling cattle feed and of commercial and custom feeding of the cattle of various owners. At all times relevant Gary owned 92 percent of the shares of 7A stock outstanding. Again pursuant to the laws of Colorado Gary organized a corporation styled "G. Weisbart & Company" (Weisbart Co.) on August 14, 1968. In exchange for shares of stock, Gary transferred to the Weisbart Co. his cattle inventory and his rights under contracts to purchase cattle. At all times relevant, Gary owned all of the outstanding shares of stock of the Weisbart Co. On December 16, 1968, the Weisbart Co. purchased cattle feed from 7A for $100,106. The price at which the feed was sold to the Weisbart Co. equalled the cost of the feed to 7A. Lacking cash to pay for the feed, the Weisbart Co. transferred to 7A cattle contracts into which it had previously entered with several unrelated parties and on which it *356 had made downpayments totaling $100,106. When Gary caused the Weisbart Co. to transfer the contracts to 7A, he did so with the intention that they be returned to Weisbart Co. when it had sufficient credit to cover the purchase price of the feed. On December 20, 1968, the Bank increased Weisbart Co.'s line of credit sufficiently that the purchase price of the feed could be covered. On March 31, 1969, the Weisbart Co. purchased the unexercised cattle contracts back from 7A for $100,106. For its taxable year August 14-December 31, 1968, the Weisbart Co. elected to be treated as a small business corporation within the meaning of Subchapter S (Secs. 1371 etseq., Internal Revenue Code of 1954, as amended.) [1] It therefore filed a U.S. Small Business Corporation Income Tax Return for the above year. [2] On that return it reported income in accordance with the cash receipts and disbursements method of accounting. OPINION The Weisbart Co. reported income and expenditures in accordance with the cash receipts and disbursements *357 method of accounting. Under that method the cost of cattle feed is properly expensed in the year when payment for the feed is made. John Ernst,32 T.C. 181 (1959). The first issue presented is whether the Weisbart Co. paid $100,106 for cattle feed during its taxable year ended December 31, 1968. Petitioner contends that payment was made on December 16, 1968, when the Weisbart Co. transferred its rights, title and interest in several cattle contracts to 7A. The resolution of this controversy depends upon petitioners being able to prove that the transfer of legal title to the contracts to 7A was more than a mere formality; that the parties to the transfer intended that beneficial ownership of the contracts pass to 7A. Cf. J. H. Baird Publishing Co.,39 T.C. 608, 618 (1962). [3] Only if beneficial ownership did indeed pass to 7A would petitioners be entitled to prevail. In our opinion, however, petitioners have failed to prove that this was the case. It would not have been consistent with Gary's plans in dividing his business between the two corporations if 7A had exercised rights *358 under the cattle contracts transferred to it. In fact 7A never exercised those rights. Rather on March 31, 1969, 7A reconveyed the contracts to the Weisbart Co. In consideration of the reconveyance, the Weisbart Co. paid to 7A $100,106, the very amount which the Weisbart Co. owed to 7A for the feed. All of this suggests that the transfer of the cattle contracts on December 16, 1968, was an empty formality, a contrivance made possible by the control which Gary exercised over the parties to the transfer, designed to secure for the Weisbart Co. a cattle feed expense deduction for 1968. It may well have been intended that the Weisbart Co. pay 7A for the feed atsometime. The Weisbart Co.'s repurchase of the contracts may in fact have constituted such a payment. Those matters are not at issue here. It is clear, however, that the transfer of the cattle contracts, not intended to confer upon 7A beneficial ownership of these contracts, cannot be considered to have been a payment for the feed. This being the case, we need not decide the second issue presented. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. The election was subsequently, terminated.↩
3. Welch v. Helvering,290 U.S. 111↩ (1933).