KAREN SOLANNE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Solanne v. Comm'r
Docket No. 11536-81.
United States Tax Court
T.C. Memo 1983-67; 1983 Tax Ct. Memo LEXIS 716; 45 T.C.M. (CCH) 657; T.C.M. (RIA) 83067; February 2, 1983. Karen Solanne, pro se. James J. Everett, for the respondent. WILES
*716 MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency in petitioner's 1977 Federal income tax in the amount of $453. The principal issue beofre us is whether petitioner's contributions in the amount of $3,156 to a Phoenix, Arizona "congregation" of the Universal Life Church, Inc., Modesto, California, are deductible under section 170. [1]
*717 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in Scottsdale, Arizona, when she filed her petition in this case. She filed her 1977 Federal income tax return with the Internal Revenue Service Center, Ogden, *718 Utah. On January 1, 1976, the Universal Life Church, Inc., Modesto, California (hereinafter the ULC), issued Charter No. 14798 to "a congregation" in Phoenix, Arizona (hereinafter sometimes referred to as the Phoenix congregation). The Charter provides, in full, as follows: Neither party to this agreement is the general agent of the other. The Universal Life Church, Inc. issues this charter in consideration of the signatories' promise that they will indemnify, save harmless, and defend the Universal Life Church, Inc. from all liability from damages to persons or property in any suit at law arising out of this agreement. By this agreement, the Universal Life Church, Inc. hereby authorizes this chartered congregation to open a bank account, or accounts with any other financial institutions, in the name of the Universal Life Church, Inc.
On January 22, 1976, the Phoenix congregation opened up checking account No. XXXX-X3945 by depositing $10 with a Phoenix branch of the First National Bank of Arizona (hereinafter the FNBA). [2] This account was closed four days later because it had developed a zero balance. The original signatories to such account were Kathleen R. Mendenhall *719 and Deidra K. Mendenhall, who signed the FNBA's account cards as the Treasurer and Secretary, respectively, of the Phoenix congregation. On July 7, 1976, petitioner, upon completing a brief mail order course, received the credentials of minister from the ULC. Throughout 1977, petitioner served as a minister of the Phoenix congregation, and she was to receive a rental allowance of $4,800 from such congregation for such year. During 1977, petitioner deposited in a Phoenix, Arizona, bank account [3] checks totalling $3,519.96, which were payable to the order of the "Universal Life Church." [4] Petitioner obtained at least $2,450 from the Phoenix congregation in the form of a purported rental allowance during 1977. [5]
*720 On her 1977 Federal income tax return, petitioner claimed a deduction for charitable contributions to the ULC in the amount of $3,305. In the notice of deficiency, respondent determined that at least $3,156 of those claimed contributions were not allowable under section 170 and, therefore, disallowed such amount. [6]
OPINION We must determine whether petitioner's alleged contributions to the ULC were deductible for 1977 under section 170(a). [7] Central to such determination is *721 whether the donee of the claimed contributions was a religious organization exempt under section 170(c) [8] during 1977. Petitioner argues that *722 the Phoenix congregation and the ULC are the same church and, since the ULC has been held to be a qualifying religious organization, exempt under section 501(c)(3), [9] she contends that her contributions, whether viewed as made to the Phoenix congregation or to the ULC, were thus deductible under section 170(a). Respondent, on the other hand, maintains that the checks which petitioner issued to the "Universal Life Church" during 1977 were not to the ULC, but to the Phoenix congregation, the latter of which fails to qualify as an exempt organization for purposes of obtaining the charitable contribution deduction. For the reasons set forth below, we hold for respondent. At the outset, we note that respondent's determination is presumptively correct and that petitioner has the burden of proving otherwise. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. The record is devoid of any credible evidence which proves that the checks which petitioner issued to the "Universal Life Church" were ever received by the *723 ULC. While petitioner offered into evidence copies of the faces of such checks, the backs of such checks, which would contain any endorsement and deposit information, are conspicuously absent from the record. Consequently, we are unable to conclude that the ULC obtained the use of the proceeds of the checks which petitioner made payable to the "Universal Life Church." [10]
We next turn to the Phoenix congregation, which respondent maintains was the donee of petitioner's contributions. Petitioner argues that the Phoenix congregation enjoys the benefit of ULC's exemption. We summarily reject petitioner's argument because it has previously been decided that the ULC's exemption is not a group exemption. United States v. Toy National Bank, an unreported case ( N.D. Iowa 1979, 43 AFTR 2d 79-954, 79-1 USTC par. 9344). Consequently, the Phoenix congregation's status as an organization to which deductible contributions can be made must be determined separately. [11]
*724 Given the record before us, we are unable to find that the Phoenix congregation qualified as a section 170(c)(2) organization. The record provides little information with respect to the beliefs or practices of the Phoenix congregation. Petitioner, a minister of the Phoenix congregation, testified that she could not recall the number of members of such congregation during 1977, and she was unable to say with any certainty that she performed any sacerdotal (i.e., religious) functions during that year. Moreover, petitioner testified that the Phoenix congregation did not have any specific address, but that the congregation's meetings would be held in the personal residences of various individuals. At such meetings, the Phoenix congregation's members, according to petitioner, would discuss "topics of interest to us," which included petitioner's explaining to individuals how to obtain minister credentials and a charter from the ULC in order to obtain tax benefits. [12] On this record, we are unable to find that the Phoenix congregation was "organized and operated exclusively for religious, [or] charitable * * * purposes * * *." Sec. 170(c)(2)(B). *725 To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The Phoenix congregation had the following name and address printed on its checks from this account: Universal Life Church, Inc., Charter No. 14798, P.O. Box 15102, Phoenix, Arizona 85018.↩
3. The record does not indicate which bank in Phoenix, Arizona, received these deposits. ↩
4. Some of petitioner's checks were payable to the "Universal Life Church, Inc." For convenience, however, we shall refer to all of petitioner's checks as being payable to the "Universal Life Church." ↩
5. On brief, petitioner conceded that she received this amount.↩
6. Respondent did not explain his basis for allowing $149 of the $3,305 which petitioner claimed to have contributed to the Universal Life Church, Inc. In the notice of deficiency, respondent maintained that in the event "it is determined that all of the $3,305 shown on * * * [petitioner's] return as a deduction for contributions is allowable, it is determined that $2,942 received as a rental allowance is includible in income under the provisions of section 61 * * *." Since we find herein that petitioner was not entitled to a deduction for her contributions in excess of the amount allowed by respondent, the rental allowance received by petitioner will not be includable in her income for 1977.↩
7. Section 170(a) provides for the allowance of deductions for charitable contributions, as defined in section 170(c). ↩
8. Sec. 170(c) defines a charitable contribution to include a contribution or gift to or for the use of-- (2) A corporation, trust, or community chest, fund, or foundation-- (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.↩
9. See Universal Life Church, Inc. v. United States,372 F. Supp. 770↩ (E.D. Cal. 1974).
10. See also Magin v. Commissioner,T.C. Memo. 1982-383; Riemers v. Commissioners,T.C. Memo. 1981-456↩.
11. See Owens v. Commissioner,T.C. Memo. 1982-671; Magin v. Commissioner,supra;Reimers v. Commissioner,supra; Abney v. Commissioner,T.C. Memo. 1980-27↩.
12. Based on the arguments appearing in petitioner's brief, it appears that the tax benefits which she anticipated were two-fold. First, to set up a congregation and make "donations" to it which would be deducted on her Federal income tax return. Second, to receive back from such congregation most of those "donations" in the form of a rental allowance which she claims is excludable from gross income under section 107(2). Since we uphold respondent's disallowance of petitioner's claimed contributions, the portion of such contributions which petitioner received back from the Phoenix congregation as a purported rental allowance would obviously not constitute income to petitioner. Consequently, we need not even address petitioner's section 107(2) argument. We note, however, that not even petitioner's own testimony (discussed infra) would support a finding that the monies which she obtained back from the Phoenix congregation were in exchange for the performance of religious duties during 1977. See sec. 1.107-1(a), Income Tax Regs.↩