T.C. Memo. 1996-510

UNITED STATES TAX COURT

ROBERT SERENBETZ AND KAREN J. SERENBETZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1397-94.                Filed November 18, 1996.

Robert and Karen J. Serenbetz, pro sese.

<u>Margaret S. Rigg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  By separate notices of deficiency, both dated
December 17, 1993, respondent determined the following deficiencies
in petitioners' Federal income taxes:

| Year | Deficiency |
|------|-----------|
| 1991 | $8,256.75 |
| 1992 | 7,810.00 |

The dispute between the parties concerns the deductibility of losses reported by petitioners in 1991 and 1992 that are attributable to their Vermont resort condominium.[1] In this regard, we must decide whether the losses constitute passive activity losses under section 469(a), which in turn depends upon whether petitioners materially participated in the rental of their condominium.

All section references are to the Internal Revenue Code in effect for the years under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners, husband and wife, resided in Newtown, Pennsylvania, at the time they filed their petition. They timely filed joint Federal income tax returns for 1991 and 1992, the 2 years under consideration.

---

[1] In another notice of deficiency, dated Oct. 18, 1993, respondent determined a deficiency in petitioners' 1990 income tax. That deficiency was also based on respondent's disallowance of a loss attributable to petitioners' Vermont resort condominium. Petitioners disputed the determinations set forth in all three notices of deficiency in a letter to the Court, dated Jan. 13, 1994, which we received and filed as an imperfect petition on Jan. 19, 1994. The letter was delivered to the Court by Federal Express, and thus did not bear a United States postmark. Because Jan. 19, 1994, is the 93rd day after the notice of deficiency for 1990 was mailed to petitioners, we granted respondent's motion to dismiss and strike year 1990.

Robert Serenbetz is a business executive. During the years under consideration, he was the president and chief operating officer of DNA Plant Technology Corporation, an agricultural biotechnology company. Prior thereto, he was a vice president of Warner-Lambert Co. and the president of American Chicle. Mrs. Serenbetz is a homemaker.

During the years under consideration, petitioners owned a condominium in Notch Brook Resort Condominiums, a 50-unit development located in Stowe, Vermont (the Vermont condominium). All condominium owners were members of the condominium association, and those condominium owners who wished to rent their units to third parties were partners in the Notch Brook Hotel Condominium Partnership (the partnership). Petitioners were members of the partnership, as were about 40 other owners.

The condominium association was governed by a board of directors. Mr. Serenbetz was a member of the board of directors of the condominium association in both 1991 and 1992. That board met on a regular basis, and Mr. Serenbetz sometimes participated in meetings by telephone. In 1991, Mr. Serenbetz spent 36 hours preparing for and attending meetings, reviewing minutes of meetings, and discussing the meetings with his wife. Mr. Serenbetz spent 22 hours in 1992 preparing for and attending board meetings and reviewing minutes of the board meetings.

The day-to-day rental operation of the partnership was run and managed by an on-site staff of nine employees of both the

partnership and the condominium association. The employees include a manager, assistant manager, bookkeeper, front-desk staff person, housekeepers, and maintenance staff. The employees maintained the partnership books and records, maintained the units and grounds, and marketed and advertised the rental operation. The partnership pays for the property insurance, utilities, and repairs of the units owned by its partners.

The expenses from all of the partners' units were pooled and shared ratably among the partners based on the partner's partnership interest (which was based on his interest in the condominium association) and the number of days each unit was available for rent during the year. Petitioners shared in partnership rental income for each day their unit was available for rent, even if it was not actually rented.

Under the partnership agreement, each unit owner is entitled to use his unit without charge for no more than 4 weeks during the winter season and 4 weeks during the summer season. Should the unit owner occupy his unit more than his/her allotted time, he is charged 50 percent of the established regular seasonal hotel rate. There is no limitation on the owner's occupancy during the other periods of the year. Petitioners and/or their children used their condominium less than 10 days during each year under consideration.

For the years under consideration, petitioners reported the income and expenses of their Vermont condominium as a trade or business activity on Schedule C of their tax return. In 1991, they

reported rental receipts of $1,814 and expenses of $27,643, resulting in a loss of $25,829. In 1992, they had $4,368 in rental receipts and $28,353 in expenses, resulting in a loss of $23,985. Petitioners used these losses to offset other income. In 1991 and 1992, petitioners reported taxable income of $3,925,065 and $307,638, respectively. Respondent determined that the losses from the Vermont condominium constitute passive activity losses within the meaning of section 469(a) and accordingly disallowed most of the losses in the years under consideration.

OPINION

Pursuant to section 469(a), a passive activity loss is generally not allowed as a deduction for the year sustained. Section 469(d)(1) defines a passive activity loss as the amount by which (A) the aggregate losses from all passive activities for the taxable year exceed (B) the aggregate income from all passive activities for such year. Passive activities are those activities which involve the conduct of a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Rental activity ordinarily is treated as a passive activity irrespective of whether there was material participation. Sec. 469(c)(2), (4). However, an exception exists for rental activity in which the average rental is no more than 7 days. Sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs, 53 Fed. Reg. 5702 (Feb. 25, 1988). In the instant case, the parties agree that the average rental period for petitioners' Vermont condominium was less than 7 days.

Petitioners contend that they materially participated in the rental of their Vermont condominium, thus making section 469(a) not applicable. "Material participation" in an activity is defined as regular, continuous, and substantial involvement. Sec. 469(h)(1).

Petitioners contend that they satisfy the safe harbor requirements of section 1.469-5T(a)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988), for material participation. That section permits a finding of material participation if:

> The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year[.]

Id.

Petitioners claim they spent 139 hours in the involvement of the operations of the rental of their Vermont condominium in 1991, and 115.5 hours in 1992. In this regard, they testified (by using a written activities list that was prepared from a contemporaneously kept diary) as to specific tasks they performed during the years under consideration. Their written activities list for 1991 shows 7 hours spent preparing Federal and State income tax returns, 20 hours traveling to and from Vermont for the annual meeting and party of the condominium association, and 36 hours preparing for, attending, discussing, and reviewing minutes of meetings of the condominium association, its Board of Directors, and the partnership. The 1991 written activities list also records

several hours for reviewing equipment and operating budgets and for paying property taxes, special condominium assessments, housekeeping bills, and maintenance bills. Similar activities were recorded on the 1992 written activities list.

Investor activities do not qualify as participation in a trade or business unless the individual is directly involved in the day-to-day management or operations of the activity. Sec. 1.469-5T(f)(2)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). Much of petitioners' activities during 1991 and 1992, like those described above, are investor activities or activities of a personal nature that do not qualify as participation in a trade or business. See Toups v. Commissioner, T.C. Memo. 1993-359; sec. 1.469-5T(f)(2)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

The financial work done by petitioners was in connection with their investment. The Treasury regulations provide that "Work done by an individual in the individual's capacity as an investor in an activity shall not be treated as participation in the activity for purposes of this section [sec. 469] unless the individual is directly involved in the day-to-day management or operations of the activity." Sec. 1.469-5T(f)(2)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). Here, the day-to-day management or operations of the partnership was by a full-time staff rather than petitioners. See Mordkin v. Commissioner, T.C. Memo. 1996-

187.

Based on the record before us, we are unable to conclude that petitioners spent more than 100 hours participating in the rental activities of their Vermont condominium during 1991 or 1992. However, assuming arguendo that they did, we believe that petitioners' participation in the rental activities of their Vermont condominium was less than that of other individuals. Thus, they do not come within the safe harbor requirements of section 1.469-5T(a)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).

Petitioners contend that although the partnership's rental activities were conducted by an on-site staff of nine employees, the number of on-site employees (9), should be divided by the number of units in the partnership (40) and when that is done, it is unlikely that any of the nine on-site employees could have spent more than 40 hours on petitioners' unit during 1991 or 1992. We do not agree with petitioners' logic. The language of sec. 1.469-5T(a)(3), Temporary Income Tax Regs., contains nothing which suggests that participation should be computed on a per unit basis. See Goshorn v. Commissioner, T.C. Memo. 1993-578.

It is settled law that taxpayers bear the burden of proving the determinations of the Commissioner in a notice of deficiency are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioners have failed to establish that they were material participants in the rental activities of their Vermont

condominium in 1991 or 1992. Consequently, we sustain respondent's determination that petitioners' losses during those years constitute passive activity losses under section 469(a).

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.