T.C. Memo. 2013-152

UNITED STATES TAX COURT

WILLIAM K. MCGRAW, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12029-12.                    Filed June 17, 2013.

<u>Frederick J. O'Laughlin</u>, for petitioner.

<u>Moenika Coleman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  Respondent determined a deficiency in petitioner's 2009

Federal income tax of $23,659 and an accuracy-related penalty under section

6662(a) of $4,732.[1]  Petitioner resided in Texas when he petitioned this Court.

---

[1]All statutory references are to the Internal Revenue Code, as amended and
in effect for the tax year at issue.  All references to Rules are to the Tax Court

(continued...)

**[*2]**   At the start of trial petitioner conceded that he had failed to include in his gross income for 2009 a taxable distribution of $67,440 from a qualified retirement plan.[2]  Two issues remain for decision:  (1) whether petitioner is liable for the 10% additional tax imposed by section 72(t) on early distributions from qualified retirement plans; and (2) whether petitioner is liable for the accuracy-related penalty imposed by section 6662.  In seeking shelter from the section 72(t) additional tax, petitioner relies on the exception for "medical expenses" in section 72(t)(2)(B).

FINDINGS OF FACT

At the outset of 2009 petitioner maintained a retirement annuity account with ING USA Annuity & Life Insurance Co. (ING).  An acquaintance offered to assist petitioner in rolling over the balance of this annuity into what was purported to be a better performing annuity.  Petitioner acquiesced in this plan.  However, instead of implementing a rollover, the acquaintance in April 2009 presented petitioner with a check for $67,440, representing the gross proceeds of liquidating petitioner's ING annuity account.  This caused petitioner distress, not only

---

[1](...continued)
Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

[2]Petitioner also conceded that he had failed to include in his 2009 gross income $52 of rental income and $183 from a State income tax refund.

**[*3]** because he expected a rollover rather than a cashout, but also because the proceeds were substantially less than what he had assumed the account was worth.

Petitioner, whose testimony revealed some familiarity with investment matters, realized that no rollover had occurred. Although he could have preserved the tax-deferred status of the funds by rolling over the money into a new retirement vehicle himself, he instead deposited the $67,440 check into his regular bank account. While initially shocked by the failure of a trusted acquaintance to implement the agreed-upon rollover strategy, petitioner came to regard this turn of events as fortuitous when he learned that his wife was pregnant. Because her first pregnancy had been difficult, he believed that he might need the funds to defray pregnancy-related expenses and determined to deposit the check.

Petitioner's wife encountered some complications with her high-risk pregnancy, though she was not hospitalized until her delivery date, December 4, 2009. The delivery was accomplished by Caesarean section. His wife did not return to her outside employment until mid-2010. Her delayed return to work was due in part to the longer recovery period necessitated by a Caesarean section, but also to her desire "to stay home and take care of the kids."

Petitioner provided no documentation to substantiate the amount of his 2009 medical expenses to the Internal Revenue Service (IRS) before trial. He itemized

**[\*4]** deductions on his 2009 Form 1040, U.S. Individual Income Tax Return, and claimed three categories of itemized deductions, but he did not report any medical expenses on line 1 of Schedule A, Itemized Deductions. On the morning of the trial, his wife discovered a document allegedly substantiating pregnancy-related expenses of approximately $5,700. However, this document was neither produced at trial nor admitted into evidence. Petitioner's best recollection was that the total out-of-pocket expenses of his wife's pregnancy were in the range of $5,000 to $6,000. When asked how he had employed the balance of the $67,440 retirement distribution, petitioner mentioned getting a room ready for the baby and using the funds "for all the baby things that you do."

United Healthcare provided medical insurance coverage to petitioner's family at the time, though petitioner offered no specific details about the scope of the coverage.

OPINION

A.    The Section 72(t) Additional Tax

The Commissioner's determination of a deficiency is generally presumed correct, though this presumption can be rebutted by the taxpayer. See Sec. 7491(a); Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend that the burden of proof should shift to respondent under section

**[*5]** 7491(a) and, if he had advanced this contention, it would lack merit. As explained below, petitioner has not complied "with the requirements under this title to substantiate" his claimed medical expenses. See sec. 7491(a)(2)(A). Petitioner therefore bears the burden of proof on this issue.

Section 72(t)(1) generally provides that, if a taxpayer receives a distribution from a qualified retirement plan, the taxpayer's income tax shall be increased "by an amount equal to 10 percent of the portion of such amount which is includible in gross income." Petitioner conceded that the entirety of his $67,440 distribution from ING is includible in gross income. Thus, the tentative additional tax imposed by section 72(t) is $6,744.

Section 72(t)(2)(A) provides several exceptions to this general rule, e.g., where the taxpayer receiving the distribution has attained the age of 59½ or is disabled. See sec. 72(t)(2)(A)(i), (iii). A further exception appears in section 72(t)(2)(B), captioned "[m]edical expenses." It provides, with exceptions not relevant here, that an early distribution from a qualified retirement plan is not subject to the 10% additional tax to the extent it does not exceed "the amount allowable as a deduction under section 213 * * * for amounts paid during the taxable year for medical care (determined without regard to whether the * * * [taxpayer] itemizes deductions for such taxable year)." Section 213(a) in turn

[*6] allows as a deduction "the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * * to the extent that such expenses exceed 7.5 percent of adjusted gross income."

For three related reasons, petitioner is not eligible for the "medical expense" exception of section 72(t)(2)(B). First, while it seems clear that his family did incur pregnancy-related expenses during 2009, he did not substantiate any particular amount of medical expenses. Although he itemized deductions, he reported no medical expenses on his Form 1040 Schedule A. He provided no documentation of medical expenses to the IRS during the examination, at the Appeals conference, or during the pretrial process. He introduced no documentary evidence at trial. Although he testified that he incurred total pregnancy-related medical expenses in the range of $5,000 to $6,000, his testimony on this point lacked certainty. Moreover, his recollection appeared to have been refreshed by the contents of an unidentified document that was not produced at trial.

Second, even if petitioner did have qualifying medical expenses, he failed to prove that the expenses were unreimbursed. Section 72(t)(2)(B) requires that in order to qualify for the exception, medical expenses must be "allowable as a deduction under section 213." Section 213(a) allows a deduction for medical

[*7] expenses only if they have not been "compensated for by insurance or otherwise." Petitioner testified that he had insurance provided by United Healthcare during 2009, but he acknowledged that he did not know the extent to which the costs of his wife's pregnancy were covered by their insurance. In the absence of any testimony or documentary evidence concerning the details of petitioner's insurance coverage and insurance claims experience, it is impossible to determine the extent, if any, to which his claimed medical expenses were "not compensated for by insurance."

Third, even if petitioner had documented some unreimbursed medical expenses for 2009, the amount would not exceed the statutory floor. Section 213 would allow a medical expense deduction only to the extent petitioner's unreimbursed medical expenses exceeded 7.5% of his corrected adjusted gross income (AGI). His 2009 tax return reported AGI of $54,351. Adding the $67,440 retirement plan distribution and other conceded adjustments to this sum produces corrected AGI in excess of $122,000, creating a statutory floor in excess of $9,150. The maximum amount of medical expenses that his testimony could support would be $6,000. Because petitioner has not proven unreimbursed medical expenses in excess of $9,150, he is ineligible for the section 72(t)(2)(B) "medical expense" exception.

**[*8]** B.     The Accuracy-Related Penalty

Section 6662 imposes a 20% penalty upon the portion of any underpayment of tax that is attributable (among other things) to "[a]ny substantial understatement of income tax." Sec. 6662(a), (b)(2). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required be shown on the return. Sec. 6662(d)(1)(A). Respondent's notice of deficiency, whose determinations have been sustained by us or conceded by petitioner, determined an understatement of income tax in excess of $23,000. This amount comfortably exceeds $5,000 and 10% of the total tax required to be shown on petitioner's 2009 return. Respondent has thus carried his burden of production by demonstrating a "substantial understatement of income tax." See sec. 7491(c).

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to * * * [it]." Once the Commissioner has carried his burden of production, the taxpayer bears the burden of proving reasonable cause and good faith. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts

[*9] and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.  Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Id.  "Reasonable cause" may also be shown by demonstrating reliance on the advice of a competent tax professional.  Sec. 1.6664-4(c), Income Tax Regs.  "Advice" must take the form of a "communication" that sets forth the adviser's "analysis or conclusion."  Sec. 1.6664-4(c)(2), Income Tax Regs.

Petitioner's 2009 tax return was prepared by a professional return preparer who is both an accountant and a lawyer.  However, petitioner did not testify to having received specific advice, from his return preparer or anyone else, that an early distribution from a retirement plan can properly be excluded altogether from gross income.  Petitioner recognized, at the time he received the $67,440 check, that a tax-free rollover had not occurred.  Rather than implementing a rollover himself by investing the funds in a substitute retirement vehicle, he deposited the money in the bank and used it for general living expenses.  His failure to report the $67,440 as gross income was not due to reasonable cause and did not reflect a good-faith effort to comply with the tax laws.

**[\*10]** The "reasonable cause" exception is similarly unavailable with respect to petitioner's failure to report, on line 58 of his Form 1040, the additional tax imposed by section 72(t). That failure was clearly attributable to his antecedent failure to report the $67,440 retirement distribution as gross income, which itself was unsupported by reasonable cause. In any event, his claimed reliance on the "medical expense" exception of section 72(t)(2)(B) lacked reasonable cause and good faith. He reported no medical expenses as allowable deductions under section 213 on his Form 1040 Schedule A, even though he itemized deductions generally, and he could not substantiate any medical expenses during the IRS examination or at trial.

Decision will be entered

for respondent.
