T.C. Summary Opinion 2017-27

UNITED STATES TAX COURT

JASON M. ROACH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7430-15S.                    Filed April 27, 2017.

<u>Andrew Aleman</u>, for petitioner.

<u>Molly H. Donohue</u> and <u>Janet F. Appel</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $3,140 in petitioner's Federal income tax for the taxable year 2012 and an accuracy-related penalty under section 6662(a) of $628. Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioner resided in Massachusetts.

After filing an answer to the petition, respondent filed with the Court a motion for leave to file out of time a first amendment to answer and lodged a first amendment to answer. Although the Court directed petitioner to file an objection, if any, to respondent's motion for leave, he failed to do so. The Court subsequently granted respondent's motion for leave and filed respondent's first amendment to answer.

Respondent's first amendment to answer includes affirmative allegations that petitioner failed to report certain wages, nonemployee compensation, and a State income tax refund that he received in 2012 and that he failed to substantiate

[1](...continued)
Revenue Code, as amended and in effect for 2012, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

an otherwise unidentified "above-the-line" deduction of $30,000. Consequently, respondent asserted that petitioner was liable for an $11,017 increase in his income tax deficiency for 2012 (resulting in a total deficiency of $14,157) and a $2,071 increase in his accuracy-related penalty (resulting in a total penalty of $2,699).

After concessions,[2] the issues remaining for decision are whether petitioner is: (1) entitled to dependency exemption deductions, a child tax credit, and an additional child tax credit for his two minor children and (2) liable for an accuracy-related penalty under section 6662(a).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

---

[2]Petitioner stipulated that for 2012 he received but failed to report the following items of income: wages of $3,598 and $1,677 paid to him by Alert Ambulance Service, Inc., and Patriot Ambulance, Inc., respectively, nonemployee compensation of $4,572 paid to him by Jay's Landscaping, and a State income tax refund of $975. The parties agree that petitioner is entitled to a reduced deduction of $24,000 (petitioner had claimed a deduction of $30,000) on line 36 of his tax return for 2012.

## I. General Background

Petitioner has been a firefighter and a paramedic for about 16 years. Stephanie Minardi, petitioner's now former spouse, has worked as a paramedic for about 12 years, and she became a registered nurse about 2 years ago.

Petitioner and Ms. Minardi met at work in 2006. They married in October 2010 and have two minor children, J.M.R. and K.A.R.

## II. Separation and Divorce Proceedings

In July 2011 Ms. Minardi moved out of the marital home, and she filed a complaint for divorce in August 2011. On March 15, 2012, the Trial Court of the Commonwealth of Massachusetts, Probate and Family Court Department (family court), issued a temporary order requiring petitioner and Ms. Minardi to comply with a stipulation on temporary orders (stipulation). The stipulation recited that they would share joint legal and physical custody of the children, were relieved of any obligation to pay child support, and would follow a very detailed coparenting

plan.[3]  In addition, petitioner was required to maintain health insurance for the children.

On May 15, 2012, Ms. Minardi's attorney filed a civil complaint for contempt against petitioner alleging, inter alia, that he had failed to comply with the coparenting schedule described above and that he owed Ms. Minardi $1,335 as reimbursement for childcare expenses.  The record does not reflect how the complaint was resolved.

On March 8, 2013, petitioner and Ms. Minardi executed a separation agreement and the family court entered a judgment of divorce nisi (which would become absolute on June 7, 2013).  Petitioner agreed to pay weekly child support of $190 to Ms. Minardi.  The separation agreement stated that petitioner and Ms. Minardi would file separate tax returns beginning with the taxable year 2012

---

[3]The coparenting plan required petitioner, over an eight-week cycle beginning February 26, 2012, to provide care for the children as follows:  (1) during weeks 1 and 2, on Monday from 7:30 a.m. to 7 p.m., (2) during weeks 3 through 7, on Wednesday from 7:30 a.m. to Friday at 3 p.m., and (3) during week 8, on Monday from 7:30 a.m. to 7 p.m.  If by the end of May 2012 petitioner and Ms. Minardi had not mutually agreed to a different schedule, petitioner would provide care for the children as follows:  (1) during weeks 1 and 2, on Monday from 7:30 a.m. to Tuesday at 7:30 a.m., (2) during weeks 3 through 7, on Wednesday from 7:30 a.m. to Saturday at 7:30 a.m., and (3) during week 8, on Monday from 7:30 a.m. to Tuesday at 7:30 a.m.

and that Ms. Minardi was entitled "to claim the children as tax exemptions every year."

The separation agreement provided that Ms. Minardi would have full legal and physical custody of J.M.R. and K.A.R. and that petitioner was entitled to visitation with the children for four hours on every fifth day of his eight-day work cycle and at other times agreed upon by both parents. The separation agreement stated in relevant part, however, that "[p]rior to the start of that visitation schedule, the Husband shall visit the children initially for three (3) visits, which shall be for an hour at first then progressing by adding an additional hour at each new visit, and they shall occur at [a] McDonald's Restaurant" and that "[i]n order to re-establish a relationship with the children, the Husband shall make arrangements with a mutually agreed-upon counselor to attend family counseling with the children and visits shall begin when recommended by the counselor."

## III. Conflicting Testimony

Petitioner, Karine Roach (petitioner's current spouse), and Ms. Minardi testified at trial. While petitioner's and Ms. Minardi's work schedules were quite demanding, the testimony that petitioner and his current spouse offered about the parental care that he provided to his children during the second half of 2011 and throughout 2012 was directly contradicted by Ms. Minardi.

Petitioner was on call for his primary employer for two 24-hour periods each week. Ms. Minardi was on a similar work schedule with her primary employer, and she and petitioner both acknowledged working part time for at least one additional employer. Ms. Minardi was also studying to become a registered nurse.

Petitioner testified that when Ms. Minardi left the marital home in July 2011, the children remained with him and that he provided care for them on average about five days each week through December 2012. He explained that he cared for the children when he was not working and that he relied on his girlfriend (now Ms. Roach) and the wife of another firefighter to care for the children when he was at work.

Ms. Minardi testified that the children moved with her to a two-bedroom apartment in July 2011, that petitioner had two brief visits with the children in the latter part of 2011, and that he last visited with them in January 2012. Ms. Minardi testified that petitioner did not comply with the coparenting schedules (described in detail above), that she provided care for the children when she was not working, and that she relied on her mother, her current husband, and a friend to care for the children when she was at work.

## IV. Petitioner's 2012 Tax Return

On January 13, 2013, petitioner prepared and filed a Form 1040, U.S. Individual Income Tax Return, for 2012. He claimed the filing status of married filing separately, reported wage income of $76,198, claimed four dependency exemption deductions (including exemptions for J.M.R. and K.A.R.),[4] a child tax credit of $2,404, and an additional child tax credit of $596.

## V. Notice of Deficiency

As previously indicated, respondent issued a notice of deficiency to petitioner for the taxable year 2012. Respondent determined that petitioner is not entitled to dependency exemption deductions for J.M.R. and K.A.R., reduced the child tax credit that petitioner claimed to $1,000, and disallowed the additional child tax credit.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290

---

[4]The parties stipulated that Ms. Minardi did not execute a Form 8332, Release/Revocation of Release of Claim to Exemption for Child by Custodial Parent, releasing her right to claim J.M.R. and K.A.R. as dependents for the taxable year 2012.

U.S. 111, 115 (1933). Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction or credit claimed. Deputy v. du Pont, 308 U.S. 488, 493 (1940).

Petitioner does not contend that the burden of proof should shift to respondent pursuant to section 7491(a). In any event, there is no support in the record for shifting the burden of proof in accordance with that provision.

I. Dependency Exemption Deduction

An individual is allowed as a deduction an exemption for "each individual who is a dependent (as defined in section 152) of the taxpayer for the taxable year." Sec. 151(a), (c). Section 152(a) defines the term "dependent" to include "a qualifying child" or "a qualifying relative".

Generally, a "qualifying child" must (1) bear a specified relationship to the taxpayer (e.g., be the taxpayer's child), (2) have the same principal place of abode as the taxpayer for more than one-half of the taxable year, (3) meet certain age requirements, (4) not have provided over one-half of his or her own support for the taxable year, and (5) not have filed a joint return for that year. Sec. 152(c)(1).

Section 152(d) generally defines a "qualifying relative" as an individual (1) who bears a specified relationship to the taxpayer (e.g., is the taxpayer's child), (2) whose gross income is less than the exemption amount, (3) with respect to

whom the taxpayer provides over one-half of the individual's support, and (4) who is not a qualifying child of such taxpayer or any other taxpayer.

At trial petitioner and Ms. Minardi offered contradictory accounts about the parental care that they provided to the children in 2012. Although petitioner testified that the children resided with him on average about five days per week that year, the separation agreement that he executed in March 2013 is strong evidence that he did not have a meaningful parental relationship with the children in 2012. In particular, the settlement agreement limited the time petitioner could visit with the children, stated that he needed to take measured steps to reestablish his relationship with them, and directed that he consult with a counselor to determine how best to proceed. On this record, we conclude that petitioner failed to show that J.M.R. and K.A.R. shared the same principal place of abode with him for more than one-half of the taxable year 2012. Therefore, we sustain respondent's determination that J.M.R. and K.A.R. were not petitioner's qualifying children within the meaning of section 152(c).

Although the record indicates that petitioner was required to support J.M.R. and K.A.R. in 2012, there is no evidence of the amount of support that he actually provided to them that year. Because we are unable to determine that petitioner provided over one-half of J.M.R.'s and K.A.R.'s support during the year in issue,

we conclude that they were not petitioner's qualifying relatives within the meaning of section 152(d).

Section 152(e) provides special rules for parents who are divorced, separated under a written separation agreement, or living apart at all times during the last six months of the calendar year. Under section 152(e)(1) and (2), a noncustodial parent may treat a child as a qualifying child or a qualifying relative if the custodial parent signs a written declaration, conforming with Form 8332, indicating that he or she will not claim the child as a dependent for that taxable year. See Armstrong v. Commissioner, 139 T.C. 468, 472 (2012), aff'd, 745 F.3d 890 (8th Cir. 2014). Section 152(e)(4)(A) defines the term "custodial parent" as the parent "having custody [of a child] for the greater portion of the calendar year."

On this record, we conclude that the children were in Ms. Minardi's custody for the greater portion of the calendar year 2012 and therefore she was the childrens' custodial parent. It follows that petitioner was the "noncustodial parent" of the children. See sec. 152(e)(4)(B). Because Ms. Minardi did not execute a Form 8332 or any other written statement conforming to its substance, we sustain respondent's determination that petitioner is not entitled to dependency exemption deductions for J.M.R. and K.A.R. for 2012.

## II. Child Tax Credit and Additional Child Tax Credit

Section 24(a) provides a tax credit with respect to each qualifying child of the taxpayer for whom the taxpayer is allowed a deduction under section 151. Section 24(c)(1) defines the term "qualifying child" as a "qualifying child of the taxpayer (as defined in section 152(c)) who has not attained age 17." Section 24(d) provides that a portion of the child tax credit, commonly referred to as the additional child tax credit, may be refundable. As previously discussed, neither K.A.R. nor J.M.R. is a "qualifying child" of petitioner as defined in section 152 for the taxable year 2012. Consequently, we sustain respondent's determination disallowing the portions of the child tax credit and additional child tax credit in dispute.

## III. Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20% of the amount of any underpayment of tax that is due to the taxpayer's negligence or disregard of rules or regulations or that is attributable to any substantial understatement of income tax. By definition, an understatement means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an

individual if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

With respect to an individual taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2000). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id. at 447; see Rule 142(a); Welch v. Helvering, 290 U.S. at 115. The Commissioner, however, bears the burden of proof in respect of an increased penalty asserted in an amendment to answer. Rule 142(a)(1).

Petitioner improperly claimed dependency exemption deductions, a child tax credit, and an additional child tax credit for J.M.R. and K.A.R. for the taxable year 2012 in disregard of applicable statutory provisions. Additionally, petitioner conceded (without explanation) that he had failed to report several items of taxable income and that he is not entitled to a portion of a deduction that he claimed on his tax return, resulting in an understatement of income tax which appears to be in excess of both 10% of the tax required to be shown on the return

and $5,000. Sec. 6662(d)(1)(A). Consequently, we find that respondent met his burden of production in respect of the penalty determined in the notice of deficiency and his burden of proof in respect of the increased penalty asserted in the amendment to answer.

Petitioner prepared and filed his tax return for the year in issue. He did not offer a defense to the imposition of an accuracy-related penalty in this case other than to assert that respondent had erred in determining a deficiency. That matter having been resolved against him, respondent's determination that petitioner is liable for an accuracy-related penalty under section 6662(a) is sustained.

To reflect the foregoing,

Decision will be entered

under Rule 155.